UNITED WHOLESALERS, Inc., a body corporate, and Michael A. Lombardi, Appellants,

v.

A. J. ARMSTRONG CO., Inc., a body corporate, Appellee.

No. 7481.

United States Court of Appeals Fourth Circuit.

Argued Nov. 11, 1957.

Decided Jan. 10, 1958.

Morton H. Perry, Baltimore, Md. (David A. Rosenberg, Baltimore, Md., on brief), for appellants.

Joseph T. Brennan, 2d, Baltimore, Md. (Hilary W. Gans, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This suit to recover $10,000 for breach of contract was brought by A. J. Armstrong Company, Inc., a New York corporation, against United Wholesalers, Inc., a Maryland corporation, and Michael A. Lombardi, its president and owner. By written contract dated May 10, 1954, United Wholesalers agreed to assign to Armstrong all of the accounts receivable arising out of its sales of merchandise for the net face amount thereof less a factoring charge of one per cent. United Wholesalers also agreed that the minimum factoring service charge which Armstrong would earn in any one contract year would amount to at least $10,-000.00, and further agreed to be responsible for any deficiency. Armstrong on its part agreed to purchase the accounts receivable provided the sale and the terms thereof were approved by it in writing and the merchandise was delivered and accepted by the customer without dispute. Lombardi on his part, in consideration of Armstrong entering into the agreement, guaranteed the performance of the contract by United Wholesalers. In June, by separate agreement, the beginning date of the contract was postponed to July 1, 1954.

No steps in the performance of the contract were thereafter taken by either party so far as the evidence shows. No accounts receivable were ever acquired by United Wholesalers, hence none were assigned to Armstrong and no money was advanced. In August 1955, after the expiration of one year from the beginning of the contract period, Armstrong called upon the defendants to pay it the sum of $10,000.00, and payment having been refused the present suit was instituted.

Lombardi was in the business of selling sewing machines, electrical appliances and furniture at retail in Baltimore city through the Home Sewing Machine Company, a corporation which he owned. In January 1954, he organized United Wholesalers for the purpose of selling sewing machines and electrical appliances at wholesale to retail dealers, expecting to get the franchise to represent the manufacturers in certain areas. He anticipated that he would do a large business for which he would need substantial funds and on this account entered into the contract with Armstrong. He failed, however, to make any arrangement with the manufacturers and consequently was unable to go into the business of selling their products. For this reason he obtained no accounts receivable from the retail dealers and none were assigned or sold to Armstrong. During the contract year beginning July 1, 1954, there were no communications between the parties to the contract and Armstrong rendered no services under the contract. From time to time during the year, however, the failure of United Wholesalers to offer any accounts for assignment was a subject of discussion amongst officials of the Armstrong Company.

The case was submitted to the jury by a charge of the district judge, wherein he emphasized the importance to the business community of recognizing the binding force of contracts in the precise form in which they are written in the absence of fraud or mutual mistake. He pointed out that the finance company had to hold itself in readiness during the whole year to put up as much as $1,000,-000.00, but that there was no certainty that United Wholesalers would do a business of that extent, and hence it might be fairly inferred that Armstrong was unwilling to enter into a contract without an assurance on the part of United Wholesalers that such an amount of business would actually be done.

Accordingly the judge instructed the jury that the plaintiff was entitled to recover the sum of $10,000 unless they believed certain testimony of Lombardi that the writing, although signed by him in two places, was never intended by the parties to be a binding contract. This qualification of the instruction was due

to testimony, on the part of Lombardi, that the parties agreed that the contract would not become effective until it was, signed not only by him but by his wife. The name of the wife was typewritten, beneath that of her husband at the end of the agreement of guarantee, but she did not sign the paper. Lombardi's testimony, however, was denied by witness for the plaintiff and the issue was fairly submitted to the jury in the charge of the court and need not be further considered since the jury found a verdict for the plaintiff.

The remaining contentions of the defendants are (1) that the contract was invalid because it lacked mutuality and therefore the judge should have directed a verdict in the defendants' favor; (2) that the judge should have submitted to the jury the question whether the contract had been rescinded by mutual abandonment; and (3) that the provisions in the body of the contract in respect to earnings by Armstrong in the minimum sum of $10,000 in one year is invalid because it amounts to the imposition of a penalty and therefore recovery should be limited to the actual damages suffered by the plaintiff.

It is first asserted that the contract lacked mutuality because Armstrong was not bound to advance any money under the contract since it reserved the right to reject any account receivable offered by United Wholesalers, and, therefore, Armstrong could have arbitrarily refused to purchase any account whatsoever. This contention, however, cannot be sustained, since the contract does not confer upon Armstrong the absolute option to refuse to accept any assignment at will. An arbitrary or unreasonable refusal on its part would have constituted a breach of its contractual obligation. The validity of contracts which require performance by one party to the satisfaction of the other is well established because there is always the implied obligation upon the party to be satisfied that the privilege be exercised in fairness and good faith. See Williston on Contracts, § 44, p. 129; Restatement of Contracts, §§ 29 and 32.

The question of abandonment is more serious. At the trial the defendants prayed the court to instruct the jury that if they should find that the agreement was mutually rescinded by the conduct of the parties, then the verdict should be for the defendants; but this instruction was refused and the jury were told that their verdict should be for the plaintiff unless they should find that the parties *agreed* to abandon the contract. We do not think that this instruction gave the defendants all that they were entitled to. The complete failure of both parties, so far as the evidence discloses, to take any step to carry out the contract or even to communicate with one another at any time during the year are circumstances of much significance. Lombardi failed to offer any account receivable to the finance company during the entire year and the latter made no inquiry as to this inaction, although the matter was discussed in its home office. Furthermore, so far as the evidence discloses, Armstrong did not find it necessary to take any steps to make preparation to furnish the funds. In Vincent v. Palmer, 179 Md. 365, 372, 19 A.2d 183, it was said that sometimes even circumstances of a negative character such as the failure of both parties to take any steps looking toward performance may amount to a manifestation of mutual assent to rescind. See also Talbert v. Seek, 210 Md. 34, 44, 122 A.2d 469; Dowling-Martin Grocery Co. v. J. C. Lysle Milling Co., 203 Ala. 49, 83 So. 486; 6 Williston on Contracts, § 1826; Restatement of Contracts, § 40(b). There was sufficient evidence to justify the submission of this issue to the jury.

If at the trial of the case upon remand the jury finds that the circumstances do not justify the inference that the contract was rescinded, it will become necessary to instruct the jury as to the measure of damages. Plaintiff contends that in such event it would be entitled to a verdict in its favor in the sum of $10,000

notwithstanding the fact that it rendered no service whatsoever under the terms of the contract. The argument is based on the provisions of the agreement and of the guaranty wherein the defendants agreed that Armstrong would earn a minimum service charge of $10,000 annually, and further agreed to be responsible for any deficiency.

■■ We do not think, however, that it follows as a matter of course that the plaintiff is entitled to the specified sum of $10,000 merely by showing that the defendants have broken the contract. It can hardly have been the intent of the parties that United Wholesalers would pay Armstrong $10,000 at the end of the year even if no accounts receivable whatsoever were assigned or financed. It is more reasonable to conclude that the purpose was to assure Armstrong that its minimum commissions and net earnings would be the same as if it had purchased $1 million worth of accounts receivable during the year. But in this view the damages suffered by Armstrong in case of a breach would not be the amount of the deficiency of the commissions but the amount of the deficiency in the net earnings. It is true that in cases where prospective damages for a breach of contract are wholly uncertain and impossible of ascertainment, the parties may stipulate in the contract a reasonable sum to be paid as liquidated damages in case of breach; but that situation is not shown in the existing case. There is nothing in the evidence to indicate that when the contract was executed the amount of the profits to be expected from the business could not have been estimated. There is indeed no evidence in the case as to what Armstrong would be compelled to do or what costs it would incur in the course of performance of its part of the contract. In the absence of such evidence, we cannot regard the sum of $10,000 as a reasonable measure of the damages that would necessarily flow from a breach of the contract by the defendant. The jury should be instructed upon the retrial of the case that if they find for the plaintiff, the amount of the verdict should be the difference between $10,000 and what it would have cost Armstrong to service accounts receivable to the amount of $1,000,000.00.

Reversed and Remanded.