George BRENGELMANN and
Gertraud Brengelmann

v.

LAND RESOURCES OF NEW ENGLAND AND CANADA, INC. and
Robert D. Spickler.

Supreme Judicial Court of Maine.

Nov. 3, 1978.

Verrill & Dana by Charles A. Harvey, Jr. (orally), Portland, for plaintiff.

Robert D. Spickler, pro se (orally).

Before POMEROY, WERNICK, DELA-HANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Robert D. Spickler, the appellant here, as one of the defendants in a civil action brought in the Superior Court (Cumberland County) by the appellees herein, George and Gertraud Brengelmann, filed a counter-claim against the Brengelmanns as the plaintiffs in the action. After a trial, and in accordance with amendments made by an order dated September 2, 1977, judgment was entered for the Brengelmanns against the defendants, including defendant Spick-ler. The judgment also dismissed defend-ant Spickler's counterclaim.

Thus, all claims involved in the action having been adjudicated, the judgment was final within the contemplation of Rule 54(b). Defendant Spickler appealed from the final judgment. This Court denied his appeal in part, affirming the judgment en-tered in favor of the Brengelmanns, but sustained the appeal as to the dismissal of the counterclaim and ordered the counter-claim reinstated for further proceedings in the Superior Court. *Brengelmann v. Land Resources of New England and Canada, Inc., et al*, Me., 380 A.2d 213 (1977).

Thereafter, Spickler filed a motion in the Superior Court, pursuant to Rule 60(b)(6) M.R.Civ.P., seeking to be relieved from the judgment as entered against him in favor of the Brengelmanns. Spickler contended that the Justice who presided at the trial was in fact biased and prejudiced against him or, alternatively, there were circum-stances which *per se*, regardless of whether the trial Justice was actually biased or prej-udiced, made it a violation of constitutional due process of law for the trial Justice to fail to disqualify himself.[1]

---

1. Spickler had attempted to raise facets of these issues in his first appeal to this Court.

He was foreclosed because he sought to estab-lish his claims by adverting to material which

A Justice of the Supreme Judicial Court was assigned to sit in the Superior Court to hear and rule on the Rule 60(b)(6) motion filed by Spickler. After a hearing held at the beginning of February, 1978 this Justice, (hereafter the "motion Justice") on March 28, 1978, denied the motion, explaining his decision in a written opinion.

Now before us is Spickler's appeal from the denial of the Rule 60(b)(6) motion.

We deny the appeal.

### 1.

We confront a threshold issue as to the Superior Court's subject-matter jurisdiction of the Rule 60(b)(6) motion.

As an officer of the Court, counsel for the appellees felt constrained at oral argument to call to our attention that he perceived a problem, pursuant to requirements of Rule 54(b), regarding the "finality" of the judgment attacked by the Rule 60(b)(6) motion.[2] The premise of counsel's reasoning is that a judgment which is not "final" within the meaning of Rule 54(b) M.R.Civ.P., is not "final" within the meaning of Rule 60(b). Assuming this premise[3] without deciding as to it, we conclude that the judgment here under attack had achieved a special posture placing it beyond the scope of those provisions of Rule 54(b)[4] which cause a judg-

ment to be "interlocutory" rather than "final."

We have already noted that the Superior Court in the first instance had fully adjudicated both the complaint of the Brengelmanns and the counterclaim of defendant Spickler. Thus, in accordance with Rule 54(b) the judgment as then entered had achieved "finality", was therefore appealable, and was appealed and decided by this Court in *Brengelmann v. Land Resources of New England and Canada, Inc., et al*, supra.

That appellate disposition, by affirming the judgment in favor of the Brengelmanns against Spickler, so fundamentally severed the affirmed judgment from the counterclaim that even though the counterclaim was ordered reinstated as pending in the Superior Court, that fact could no longer, by virtue of Rule 54(b), change the affirmed judgment's status from "final" to "interlocutory." Having once achieved finality in accordance with Rule 54(b), and having been appealed to this Court as the Court of last resort and having been affirmed, the judgment had become "final" in a further sense that it was ultimately definitive and therefore no longer subject to being affected by the Superior Court through any direct proceedings. This being so, the judgment had been placed beyond

---

could not properly be made part of the record of that appeal.

**2.** Rule 60(b) M.R.Civ.P. authorizes relief from "a *final* judgment, order, or proceeding . . ." (emphasis supplied)

**3.** We have previously noted that we take our guidance in this area from the federal practice. *Wormelle v. George*, Me., 325 A.2d 4, 5 n.3 (1974). The federal courts apparently treat as indistinguishable the "final" judgment from which relief is available under Rule 60(b) and the "final" judgment Rule 54(b) authorizes the trial court to enter before the entry of judgment adjudicating all the claims presented by an action. See 6A Moore's Federal Practice ¶ 60.-03[4], 7 Moore's Federal Practice ¶ 60.20. The theory appears to be that to relax the requirement of finality in the context of Rule 60(b) proceedings would set at naught the oft-reiterated principle that such proceedings are "not a substitute for appeal." See 11 Wright & Miller,

Federal Practice and Procedure § 2851, at 142 n.19 (citing representative cases).

**4.** Rule 54(b) reads:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

the reach of the provision in Rule 54(b) stating that "[i]n the absence of . . . [a] determination and direction . . ." by the presiding Justice in the Superior Court for "the entry of a final judgment as to one or more but fewer than all of the claims . . .", the consequence will be that

> "any order or other form of decision, . . which adjudicates less than all the claims . . ."

is interlocutory in that it

> "shall not terminate the action as to any of the claims . . . , and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . ."

This conclusion is more readily apparent if we change the circumstances here in one respect: by having the original finality, and appealability, of the judgment at issue arise not because the Superior Court had adjudicated both the claims asserted by the complaint and the counterclaim but rather because the Superior Court had left the counterclaim pending but had made a determination and direction for the entry of a final judgment as to the claims asserted by the complaint. Just as in this latter situation the final judgment, once affirmed on appeal, would be beyond the further applicability of Rule 54(b) because it had achieved ultimately definitive finality regardless of the pendency of the counterclaim, does not the same status of ultimately definitive finality attach to the judgment here at issue precisely for the same reason:—that it had had an original finality to be appealable and was affirmed on appeal by the Court of last resort?

In the present circumstances, then, to assert that merely because the original finality, and appealability, of the judgment here at issue had been achieved in the absence of a determination and direction by the Superior Court for the entry of a final judgment, such determination and direction

must now be supplied to avoid interlocutoriness under Rule 54(b)[5] would be to ignore substance and exalt form. The judgment having been placed beyond possibility of being affected by direct proceedings either in the Superior Court or on appeal, because it had already been final and appealable and affirmed in the appeal to the Court of last resort, the pending counterclaim is the *only* claim remaining open for direct appellate review. Were we, then, to start anew the Rule 54(b) cycle by treating the judgment now under consideration as other than a "final" judgment, we would not be serving the policy of avoiding piecemeal appellate review, and we would defeat other policies underlying the rule requiring finality of judgments: the prevention of unnecessary delay and conservation of judicial resources.

The judgment here attacked by the Rule 60(b)(6) motion was a final judgment as contemplated by Rule 60(b), and therefore that prerequisite of subject-matter jurisdiction in the Superior Court was established.

*2.*

We turn to the merits of Spickler's claim for relief from the judgment entered against him.

As to the contention that the trial Justice was in fact biased and prejudiced against Spickler and manifested such bias and prejudice during the course of the trial, the motion Justice stated in his written opinion that he had reread the transcript of the trial

> "in an effort to discern overtly or 'reading between the lines' (as suggested by Mr. Spickler at the hearing) prejudice on the part of the Justice. His charge to the jury was again carefully considered as well as his ruling, which was favorable to Mr. Spickler, on the Plaintiffs' motion for counsel fees. . . . [T]his study of the trial transcript was done with increased sensitivity because of the allegations of bias and prejudice."

**5.** At oral argument counsel urged that to overcome the jurisdictional infirmity to which he had alerted us, we should remand the case to the Superior Court for a *nunc pro tunc* determination and direction for the entry of final judgment.

Thus scrutinizing the trial proceedings and also

> "giving due consideration to those evidentiary matters called to the attention of the Court at the hearing . . ."

on the Rule 60(b)(6) motion, the motion Justice failed to

> "find objective evidence to support what is apparently Mr. Spickler's subjective belief that the 1976 trial was tainted by judicial bias and prejudice."

Our own careful scrutiny of the record confirms that far from being clearly erroneous (which is the standard by which we must review the motion Justice's decision to determine whether it should be overturned), the conclusion reached by the motion Justice was plainly correct.

Appellant Spickler claims a second ground for Rule 60(b)(6) relief: that even if there was not actual bias or prejudice on the part of the presiding Justice against him, circumstances were involved which *per se* required, as a prophylactic measure to ensure constitutional due process of law, that the trial Justice disqualify himself.

In his opinion the motion Justice describes these alleged circumstances as follows:

> "It is asserted that . . . the wife of the presiding Justice, who was and is an attorney, had represented Mr. Spickler previously and had been discharged by him, . . . [thus to be] deprived . . of what might have been a substantial fee."

Appellant Spickler correctly argues that the Supreme Court of the United States has recognized that even where actual bias or prejudice on the part of a Judge is not, or cannot be, shown, in some kinds of circumstances a *per se* prophylactic rule of judicial disqualification is operative to guarantee constitutional due process of law. These are the patterns of circumstances as to which

> "experience teaches that the probability of actual bias . . . is too high to be constitutionally tolerable."

See *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

We decide that in the present situation the circumstances asserted by Spickler cannot bring into play a prophylactic rule for judicial disqualification. Plainly, before such rule could be applicable, it would have to be shown that the trial Justice *knew* of the circumstances on which Spickler relies; only if the Justice knew that Spickler had discharged the Justice's wife from a case on which she might have earned a large fee could there be a basis for contending that a "probability of actual bias . . ." on his part was generated which was "too high to be constitutionally tolerable." The evidence is utterly deficient to show knowledge by the trial Justice either of these particular circumstances or of any circumstances indicating a hostility between Spickler and the wife of the Justice that could be deemed to carry over to the trial Justice and create a probability of actual bias on his part too high to be consistent with due process of law.

That the motion Justice so concluded is shown by his finding that

> "[t]he question of the disqualification of the presiding Justice was openly discussed preliminarily to the taking of testimony in the 1976 trial, at which time all parties involved were aware of the Justice's wife's relationship with Mr. Spickler."

It is plain from the evidentiary record of this discussion that the relationship between the Justice's wife and Spickler *as it was then known* by all who participated in the discussion, including the trial Justice, was that shown by the following colloquy:

> "THE COURT: . . . Mr. . . . [attorney for defendants Land Co. and Spickler] . . . has advised me that his client advised him that my wife represents Mr. Spickler in some pending litigation. Mr. Spickler indicated that she had never in any way had any association with this litigation.
>
> "MR. . . . : No.
>
> "THE COURT: Mr. . . . , [attorney for the Brengelmanns, the plaintiffs] do you have any objection to my

continuing to serve as a presiding Justice in this case?

"MR. . . . : Your Honor, I have no objection to you continuing to serve in this case.

"THE COURT: Mr. . . . , do you or either of your clients have any objection to my continuing to serve on this case?

"MR. . . . : I'm going to ask Mr. Spickler this question. May I ask him this question?

"THE COURT: You certainly may. . . . ."

What transpired thereafter is shown by the motion Justice's further finding:

"The attorney who then represented Mr. Spickler was given an opportunity to consult with him on the question of judicial disqualification, and the Court was informed that 'he has no objection' to the continued participation of the Justice. The record discloses nothing coercive underlying this decision."

The evidence described above, and the motion Justice's interpretation of it, thus establishes that the trial Justice *did not himself know, and was never told by Spickler or Spickler's attorney*, about the circumstances now being relied on by appellant Spickler to invoke a constitutionally mandated prophylactic requirement for the trial Justice's disqualification. This being so, the foundation necessary to support Spickler's constitutional claim does not exist, and the claim falls.

In an effort to avoid this conclusion appellant Spickler, representing himself, sought at the oral argument of the appeal

to undermine the finding of the motion Justice that "[t]he record discloses nothing coercive underlying . . . [the] decision" of Spickler's attorney to inform the trial Justice that Spickler " 'has no objection' to the continued participation of the [trial] Justice." Spickler argued that the motion Justice had denied him opportunity to place in evidence tape recordings in which, as Spickler represented to the motion Justice, Spickler's attorney had told him that he was "scared to death" of the trial Justice who is "a powerful man in the court system . . . ." and, as a "young lawyer getting started . . . ", the attorney would not "dare . . . cross him . . . ."

Arguendo, we assume as the strongest implications of this offer of proof that (1) Spickler had told his attorney to inform the trial Justice that Spickler had discharged the Justice's wife from a case on which she might have opportunity to earn a large fee and to press the Justice, in light of these circumstances, to disqualify himself and (2) Spickler's attorney, because he was afraid of incurring the trial Justice's wrath, made no mention of these matters to him but betrayed Spickler by stating that there was no objection to the Justice's continued participation in the case.[6] Even if accepted, these facts provide no support for the claim that the trial Justice's continued participation, in these circumstances, subjected Spickler to so high a likelihood of an actually prejudiced tribunal as to be inconsistent with the constitutional guarantee of due process of law. All that these hypothesized facts would show is that it was inadequate representation by Spickler's attorney[7] which was responsible for the trial Justice's

---

6. Actually, the record utterly fails to support implying such facts. Spickler never asserted a claim before the motion Justice that his attorney had misrepresented Spickler's position to the trial Justice. On the contrary, it is plain in the record that Spickler agreed with the statement in his attorney's affidavit, which Spickler placed in evidence, that:

"I [the attorney] did not discover until after the trial . . . that Mr. Spickler had allegedly discharged . . . [the wife of the trial Justice] as his attorney in another case immediately before the Brengelmann trial."

7. We need not decide whether it would be an *independent* ground for relief from a judgment under Rule 60(b) that the person against whom the judgment was rendered had been inadequately represented in critical respects by his attorney. By virtue of procedural default Spickler has lost the opportunity to raise that issue in a Rule 60(b) proceeding since he failed to raise it in the present proceeding. Although the memoranda, briefs, transcripts, and earlier briefs incorporated by reference in the motion mention inadequacy of representation, we find it plain that such allusions were made to show alleged instances of the trial Justice's actual

*not knowing* that Spickler had discharged the Justice's wife from a case on which she might have earned a large fee. The controlling point is that whatever the reason, the trial Justice *lacked this critical knowledge.* Without his having such knowledge, there was nothing to which, in the language of *Withrow v. Larkin,* supra, "experience" could point to

". . . [teach] that the probability of actual bias . . . [on the part of the trial Justice was] too high to be constitutionally tolerable."

The motion Justice acted correctly in denying the Rule 60(b)(6) motion.

The entry is:

Appeal denied.

McKUSICK, C. J., and ARCHIBALD, J., did not sit.

bias and prejudice, and how those manifestations of bias and prejudice caused Spickler's trial to be unfair. No formal document before the motion Justice, no oral representations made in the course of the hearing on the Rule 60(b)(6) motion, and, of particular importance, no portion of the letter written by Spickler in response to the motion Justice's request that Spickler give him a written explanation of exactly what he was claiming, and nothing asserted to us at the appellate level either in brief or oral argument asserted inadequate representation by counsel as an *independent* ground of relief under Rule 60(b).