### DAIRY FARM LEASING COMPANY, INC.

v.

### Elvin HARTLEY et al.

Supreme Judicial Court of Maine.

Dec. 26, 1978.

Robert E. Sandy, Jr. (orally), Waterville, for plaintiff.

Stitham, Clapp & Cunniff by Douglas A. Clapp (orally), Pittsfield, for Elvin Hartley.

Lawrence Boris, Waterville, for defendants.

Before WERNICK, ARCHIBALD, DE-LAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

In this contract action upon the default of the Defendant, Elvin Hartley, and without further notice to him, the Plaintiff, Dairy Farm Leasing Company, Inc., obtained a default judgment against this Defendant on January 28, 1977 in Superior Court in Kennebec County. In June, this Defendant moved for relief from that judgment, and on that motion in September, the Superior Court ordered that he be heard on the issue of damages only. As a result of a hearing on November 30, 1977, the Superior Court on the same day entered judgment for the Plaintiff against this Defendant in the sum of $11,477.87.

This Defendant appeals, asserting that (a) the denial of the motion to fully set aside the default judgment was an abuse of discretion, and (b) the Superior Court erred in permitting the recovery of liquidated damages, absent a showing by the Plaintiff of the reasonableness of that contract provision as an anticipated quantum of damages.

We sustain the appeal.

The Plaintiff leased twenty dairy cattle to the Defendants, David Starbird and Brenda Starbird, at a fixed rental fee for a four year term beginning May 18, 1974, with an option to purchase or extend at expiration of the term.

In the fall of 1974 the Defendant, Elvin Hartley, took over operation of the Starbirds' farm in Clinton, Maine, and on October 30, 1974, he requested that the Plaintiff remove the cattle. On November 7, 1974, the thirteen cattle then at the farm were removed. The Plaintiff alleged that Hartley was the assignee of the Plaintiff's lease. This is reiterated in an affidavit of Plaintiff's attorney dated January 27, 1977, in which the attorney avers that the agreement with the Starbirds had been assumed by Hartley.

On September 16, 1975 Hartley was served with the Plaintiff's complaint, claiming damages for breach of the agreement and conversion of the missing cattle and certain calves. The Starbirds, also named as Defendants, cross-claimed that Hartley was liable to them for any amount due the Plaintiff.

Hartley's only response was a letter to the Plaintiff's attorney, sent on September 23, 1975, denying any agreement with anyone concerning the cattle, and stating he had no money and could not afford an attorney.

Default judgment against Hartley was not entered until fifteen months had gone by, and then without any further notice being given to him. Meantime, the Plaintiff had settled with the Defendants Starbird. Upon the motion for relief from the judgment filed by an attorney for Hartley, the Superior Court ruled that the letter to the Plaintiff's attorney was "in the nature of an appearance," and granted Hartley relief from the judgment only as to the issue of damages.

At the hearing on damages in November, 1977, the basic argument urged by Hartley's attorney was that the acceleration clause of the contract of lease was a penalty clause and that the Plaintiff had laid no foundation for permitting recovery thereunder upon the basis of liquidated damages.

For a provision for liquidated damages to be enforceable, the requirements are two-fold. An agreement made in advance of breach, fixing the damages thereon, is not enforceable unless (a) the damages caused by the breach are very difficult to estimate accurately and (b) the amount so fixed is a reasonable forecast of the amount necessary to justly compensate one party for the loss occasioned by the breach of the other party. *Interstate Industrial Uniform Rental Serv., Inc. v. Couri Pontiac*, Me., 355 A.2d 913, 921 (1976). The reasonableness of the amount stipulated as liquidated damages is to be examined as of the time the contract was made. Furthermore, the amount must be reasonable both in terms of the subject matter of the contract and the parties' situation and as a prediction of the harm resulting from a prospective breach. *Id.* The Court will enforce a good-faith attempt to fix a sum as the equivalent of the prospective injury.

Obviously, if the sum is not the product of a good-faith attempt to anticipate actual loss, the label "liquidated damages" will not prevent the court from calling it a penalty and refusing to enforce it. *Id.*

The form lease prepared by this Plaintiff provided a complex and overlapping scheme of remedies which it recognized were all subject to limitation under applicable state law. That lease provided in part:

In any such event [a default], all payments due or to become due at any time under this Lease shall be accelerated and become immediately due and payable without notice or demand except as required by law, and all expenses of collection including reasonable attorney's fees incurred by "A" shall be paid by "B"; and at the option of "A" and with or without process "A" may take possession of and remove the Property (i.e. all cows and their progeny) and in connection with such removal "B" agrees that it will give its full cooperation and the use of such facilities as may be on the premises of "B", and, to the extent permitted by law, "A" may retain payments previously made by "B" as liquidated damages and rental for the use of Property, as herein provided. "A" may make any disposition of the Property that it deems fit and if it desires to resell may do so with or without notice, and with or without the Property being at the place of sale, at private or public sale, except as otherwise required by applicable law. "A" shall have the right to bid at such sale and become the purchaser of the Property. The proceeds of the sale shall first be applied to payment of the expenses of the sale and then shall be applied to the expenses incurred in retaking, freight, storing and selling the Property and then to the payment of the balance due under the Lease. If a deficiency results after resale of the Property, "B" agrees to pay such deficiency forthwith, together with reasonable attorney's fees for the recovery thereof incurred by "A", subject to any limitation of applicable law.

 Clearly, failure to make rental payments constituted a default calling into play the clause of the lease set forth above. However, the Plaintiff chose to rely solely on the clause of the lease accelerating all future rental payments. This provision of the lease was one for liquidated damages. Absent a showing by the Plaintiff that damages were difficult to estimate accurately in advance and the amount fixed was a reasonable forecast, the provision was unenforceable.

In *Interstate Industrial Uniform Rental Serv., Inc. v. Couri Pontiac, Inc.*, Me., 355 A.2d 913 (1976), this Court considered a comparable contract provision. There the contract provided for liquidated damages, which were to be one-half the weekly rental service charge for the life of the contract remaining at breach. *Id.* at 916. In the case at bar the measure of damages relied upon by the Plaintiff was to be the total of the monthly rental installments remaining due under the lease. Such a measure of damages is clearly one for "liquidated damages" as exemplified by the *Interstate* decision.

The crucial question is, then, whether the Plaintiff must make a preliminary showing before recovering damages measured by this liquidated damage clause. In the instant case, the Plaintiff introduced no evidence whatsoever showing why acceleration of all remaining rental payments was a reasonable forecast of the Plaintiff's damages, nor why damages were very difficult to estimate accurately in advance. Thus the record in this case may be sharply contrasted to that provided in the *Interstate* case; there the plaintiff's general manager testified as to the economic basis for the agreement and the difficulty of advance estimation of the actual damages. *Id.* at 922. However, in *Interstate* our Court was not called upon to expressly rule that the plaintiff bore the burden of proof and the initial burden of producing evidence on these issues.

 It is fundamental in our law that the plaintiff has the burden of proving his damages. *McDougal v. Hunt*, 146 Me. 10, 14, 76

A.2d 857 (1950); *Hamlin v. N. H. Bragg & Sons*, 129 Me. 165, 168, 151 A. 197 (1930); *Cullicut v. Burrill*, 120 Me. 419, 422, 115 A. 172 (1921); *Winslow v. Lane*, 63 Me. 161, 163 (1873).

In several jurisdictions where the issue has arisen the courts have so applied this rule as to require a party seeking recovery under a liquidated damage clause to demonstrate that the amount fixed was a reasonable forecast of his damages. One such court has held:

> "[T]he plaintiff had the obligation of demonstrating some basis upon which, when the formula was fixed, it could be said to be a reasonable forecast of damages."

*Wilson v. Clarke*, 470 F.2d 1218, 1223 (1st Cir. 1972). *See also Garrett v. Coast & Southern Fed. Sav. & Loan Ass'n*, 9 Cal.3d 731, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973); *Massey v. Love*, 478 P.2d 948 (Okl.1970); *United Wholesalers, Inc. v. A. J. Armstrong Co.*, 251 F.2d 860, 863 (4th Cir. 1958); *Patterson v. Anderson Motor Co., Inc.*, 45 Tenn. App. 35, 319 S.W.2d 492 (1958); *Atkinson v. Pacific Fire Extinguisher Co.*, 40 Cal.2d 192, 253 P.2d 18 (1953); *Stewart v. Basey*, 241 S.W.2d 353 (Tex.Civ.App.1951), *aff'd*, 150 Tex. 666, 245 S.W.2d 484 (1952); *Trinity Universal Ins. Co. v. Smithwick*, 222 F.2d 16, 21 (8th Cir. 1955), *cert. den.*, 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955). *McIlvenny v. Horton*, 227 Ark. 826, 302 S.W.2d 70 (1957). We adopt this rule and apply it in the case at bar because it best comports with the policies underlying the rules governing recovery of liquidated damages and the general rules relating to the burden of proof.[1]

Provisions for liquidated damages are not per se in disfavor with the courts, because such provisions may greatly simplify proof at trial; however, the amount provided for as liquidated damages should be substituted for the amount of the actual damages only where it has been shown that the amount of actual damages was difficult to forecast and where there was some reasonable relationship between the amount of damage fixed and that likely to be suffered. *See Interstate Industrial Uniform Rental Serv., Inc. v. Couri Pontiac, Inc.*, Me., 355 A.2d 913, 921 (1976); Rest. Contracts § 339 Comment (a) (1932).[2]

Being both the moving party in this action, and the draftsman of the form contract,[3] the Plaintiff has the most imme-

---

1. The courts which have faced this question of the burden of proof where liquidated damages are claimed have not all come up with the same answer. For cases reaching a different result, *see Jobe v. Writer Corp.*, 34 Colo.App. 240, 526 P.2d 151 (1974); *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.*, 153 Conn. 681, 220 A.2d 263 (1966); *Murray v. Hidden Lake Development Corp.*, 281 So.2d 537 (Fla.App.1973); *Silver Dollar Club v. Cosgriff Neon Co.*, 80 Nev. 108, 389 P.2d 923 (1964); *Perma-Stone Bi County Corp. v. Ackerman*, 15 Misc.2d 640, 182 N.Y.S.2d 655 (1959).

2. This section of the Restatement provides in pertinent part:

 (1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless
 (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
 (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

We note with approval that the initial clause is cast in negative terms denying recovery upon a liquidated damage clause, absent a positive showing of the matters set forth in subsections (a) and (b).

3. Although the Defendant urged at oral argument that the writing which underlies the controversy was a contract of adhesion, we do not reach that question in disposing of the appeal before us. It is well to note, nevertheless, that where a standard-form, printed contract is submitted to the other on a "take it or leave it" basis, upon equitable principles the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position, because the parties are in vastly unequal bargaining positions. *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 383 n.5 (9th cir. 1965); *Powell v. Central California Federal Savings & Loan Ass'n*, 59 Cal.App.3d 540, 130 Cal.Rptr. 635. It may also be noted that when a contract of adhesion is exacted by the overreaching of a party, the defense of unconscionability may be asserted. *Fluor Western, Inc. v. G&H Offshore Towing Co.*, 447 F.2d 35 (5th cir. 1971). *See Bither v. Packard*, 115 Me. 306, 314, 98 A. 929

diate access to the evidence on the issue of both (a) the difficulty of advance estimation of damages and (b) the reasonableness of the forecast. The Plaintiff is the party seeking recovery and should be required to show the basis for that recovery rather than requiring its adversary to bear the burden of coming forward to disprove the Plaintiff's assertions on those points.

The enforcement of a liquidated damage clause is not so favored by the law or policy that this normal rule of placing the burden of proof upon the plaintiff should be disturbed. Nor does it seem inherently more probable than not that a liquidated damage clause is a reasonable forecast of the probable damages. A clause such as this may well have been placed in the contract by the lessor for its *in terrorem* effect upon the lessee. *See generally* J. Weinstein & M. Berger, *Weinstein's Evidence* par. 300[03], p. 300–13–14 (1977).

This Defendant, Hartley, clearly raised this issue at the hearing on damages in Superior Court. His argument was reiterated several times during the hearing. The Plaintiff at no time introduced evidence of the difficulty of accurate estimation of actual damages or the reasonableness of the forecast. *Cf. Interstate Industrial Uniform Rental Serv., Inc. v. Couri Pontiac, Inc.,* Me., 355 A.2d 913, 922 (1976).

■ We are left in doubt as to the parties' real intentions.

"When it is doubtful on the face of the instrument whether the sum mentioned was intended to be stipulated damages or a penalty to cover actual damages, the courts hold it to be the latter." *Smith v. Wedgwood,* 74 Me. 457, 460 (1883).

We apply that rule here.

Not only did the Plaintiff fail to establish the two-fold requirement for enforceability of the provision for liquidated damages, but further examination of the record of the hearing on damages in the Superior Court reveals that at no time did the Plaintiff offer evidence establishing the quantum of its actual damage.

■ By the contract of lease the lessees agreed to pay forty-eight monthly installments. Once the contract was breached by failure to pay an early installment, the Plaintiff was entitled to recover the present value of the installments remaining unpaid less the fair market value of the remaining term for leasing the cattle. The record before us is silent as to the present value of the remaining installments. Only the total rental for the term, $18,144.00 was demonstrated and this total was to be reduced by the rent actually paid, $2,799.13, and certain other amounts.

■ Furthermore, the record is silent as to the fair market value of the remainder of the term for leasing the cattle. The cattle returned to the Plaintiff were sold for $200 a head. That this amount does not establish the fair market value of the remainder of the rental term is reflected in the Plaintiff's brief, where it stated that "The Defendants were not simply leasing a few thousand dollars worth of livestock; they were leasing a few thousand dollars worth of livestock which was capable of producing tens of thousands of dollars worth of milk over the term of the lease." There is before us no suggestion that the Plaintiff would be unable to lease these same animals for as much as or more than the amount provided for in the Plaintiff's contract of lease with the Defendants Starbird, which contract, *arguendo*, was assumed by this Defendant, Hartley.

■ The Plaintiff cannot leave the amount of its actual damage to mere guess or conjecture.

When recovery may be had *only for actual damage sustained* the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty. While the determination thereof may be the result of the

(1916); 11 M.R.S.A. § 2–302 (1964); Kessler, *Contracts of Adhesion—Some Thoughts About Freedom to Contract,* 43 Colum.L.Rev. 629 (1943); Patterson, *The Interpretation and Con-* *struction of Contracts,* 64 Colum.L.Rev. 833, 855–62 (1964); Leff, *Unconscionability and the Code—The Emperor's New Clause,* 115 U.Pa.L. Rev. 485 (1967).

exercise of judgment applied to facts in evidence, those facts must be such as to allow the amount of damages to be determined therefrom with reasonable, as distinguished from mathematical, certainty by the exercise of sound judgment. The determination of the amount must not be left to mere guess or conjecture.

*McDougal v. Hunt,* 146 Me. 10, 14, 76 A.2d 857, 860 (1950).

■ In sum, at the hearing on damages in Superior Court the Plaintiff might have satisfied its burden of proof in either of two ways. It could have established by competent evidence that the provision for liquidated damages met the two-fold requirement of our law. Alternatively, the Plaintiff could have adduced evidence establishing the actual damages to it which resulted from this Defendant's breach. We conclude that the Plaintiff failed to do either.

The entry will be:

Appeal sustained.

Judgment set aside.

Remanded with direction to enter judgment for Defendant, Elvin Hartley.

McKUSICK, C. J., and POMEROY, J., did not sit.