**A. L. BROWN CONSTRUCTION CO., INC.**

v.

**James J. McGUIRE and Nancy S. McGuire.**

Supreme Judicial Court of Maine.

Argued June 10, 1985.

Decided July 11, 1985.

Taylor, Keane & Blanchard, P.A., John E. Lyons, Jr. (orally), Portsmouth, for plaintiff.

Bell & Geores, Martha E. Geores (orally), Lewiston, for defendant.

Before NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ. and WERNICK, A.R.J.

SCOLNIK, Justice.

A.L. Brown Construction Co., Inc. (Brown) brought suit against James and

Nancy McGuire for the balance due on a contract under which Brown built the McGuires a house in York, Maine. The McGuires counterclaimed, alleging that there were substantial defects and that Brown had never obtained a certificate of occupancy. The parties negotiated a settlement agreement on the morning of trial, April 9, 1984. The McGuires repudiated the agreement, prompting Brown to institute the present action to compel performance. After a hearing, the Superior Court, York County, declared the settlement agreement void "for lack of consideration, and against public policy." We disagree on both counts, finding the agreement to be valid and enforceable. Accordingly, we vacate the judgment.

Under the settlement Brown agreed to repurchase the McGuires' house "as is and where is." To effect the sale, paragraph 6 of the agreement stated, "the Buyer through Meadowbrook Associates, shall have the right to show the home and advertise its sale subject to reasonable notice at all times to Seller." The closing was to take place "prior to" July 9, 1984, with the McGuires permitted to remain in the house until that date. At the closing the McGuires would deliver title to Brown "or his nominee." "Simultaneously therewith Buyer or his nominee shall pay the purchase price ... the parties shall deliver to each other general releases and the above mentioned action shall be dismissed with prejudice and without costs." The court was notified and the suit was continued.

The closing never took place, so Brown brought this action for specific performance of the settlement agreement. According to the testimony at the hearing, the McGuires rebuffed Meadowbrook Associates' first attempt to show the house to a potential buyer. After signing the agreement they had become concerned that they would be liable for the defects if title passed directly from them to a third party. They insisted that Brown could not show the house while they still owned it. James McGuire told Meadowbrook Associates that, as far as he was concerned, "the contract is void and nullable, [Brown] did not own the house and I did not want anything more to do with it."

At some point a third party signed a purchase and sale agreement without having seen the house's interior, but Brown was forced to refund her deposit when it became clear by July 27 that the McGuires would not go through with the closing. As far as the McGuires were concerned, "[we] didn't need Mr. Brown to sell our house."

The Superior Court made few factual findings since it determined that the agreement was unenforceable. In support of that determination the McGuires rely principally on the court's ruling that the agreement was "against public policy." The court itself gave no explicit basis for this ruling. Its most pertinent finding is that, "defendants are justified in feeling that there might be some liability exposure (whichever way an eventual determination of liability or non-liability is made) because of known deficiencies." This, alone, is not reason to hold a contract completely void. The law does not prohibit one from entering into an agreement the performance of which might subject him to future liability to third parties. *Cf. Murray v. Inhabitants of Town of Lincolnville*, 462 A.2d 40, 43, n. 4 (Me.1983) ("the fact that the performance called for by a contract would violate state law if undertaken without some license or permit does not render the contract invalid or unenforceable on its face....")

This is not a contract to commit a crime. Nor is it a contract to perpetrate a fraudulent conveyance, as the McGuires seem to argue here. They suggest that they would inevitably be party to misrepresentation if they performed the agreement. *See* Restatement, Contracts, § 577. This contention is flawed in at least two respects. First, not only was there no finding that Brown had misrepresented anything to any third party or would do so in the future, there was no evidence at all that would support such a finding. Sec-

ond, the McGuires did not show that they themselves could not have disclosed any defects to the prospective purchasers. Finally, this was not "a contract of adhesion ... exacted by the overreaching of a party [where] the defense of unconscionability may be asserted." *Dairy Farm Leasing Co., Inc. v. Hartley,* 395 A.2d 1135, 1139, n.3 (Me.1978).[1] Rather than being against public policy, the encouragement of litigation settlement is very much in the public interest.

The Superior Court's alternative ground for invalidating the settlement agreement was the asserted lack of consideration. It is unclear upon which of its factual findings it based this ruling. The McGuires rely on none of them, arguing instead that a contract that public policy makes unenforceable is also void for lack of consideration. Thus, in their view, failure of consideration is not an independent ground for the judgment, and, if we adopt their view, it falls with the public policy argument.

■ Because the Superior Court gave principal emphasis to the question of consideration, we prefer to analyze it independently of the policy issue. The finding upon which the court apparently based its ruling is that, "[t]he action allegedly being settled and resolved has not been dismissed or otherwise terminated and could be reactivated by either party." In this it overlooked paragraph 8 of the agreement itself, which provides that the parties would not dismiss the lawsuit until the closing. Dismissal was an element of the promised performance, not of the consideration for the settlement.

■ Also part of Brown's performance was the payment of the agreed price. Thus, if, when the court stated, "[Brown] has never made an offer of the purchase price to Defendants, nor has it put in evidence any capability to raise the money," it

meant that the consideration had failed, it was in error. Mutual promises to exchange releases and settle claims are, themselves, adequate consideration for a contract. *Dom J. Moreau & Son v. Federal Pac. Elec. Co.,* 378 A.2d 151, 153 (Me. 1977). In this case, Brown's forbearance from prosecuting its claim was not, as the Superior Court thought, necessary for there to be consideration. Its promise to do so and the McGuires' promise to drop their counterclaim were sufficient. The parties' mutual promises regarding the sale of the house provided additional consideration.

It is more likely that the court's finding that Brown had made no offer pertained to the standard for granting specific performance of a contract to convey real estate, one element of which is that the plaintiff demonstrate its ability to perform. *Pelletier v. Dwyer,* 334 A.2d 867, 871 (Me.1975). If so, the finding was unnecessary to the Superior Court opinion, since that court held the agreement unenforceable in any event. We, however, hold the agreement to be valid, so we will address the issue in order to promote judicial economy. *See Kimball v. State,* 490 A.2d 653, 659 (Me. 1985); *Brengelmann v. Land Resources, Etc.,* 393 A.2d 174, 177 (Me.1978).

■ Whether or not the Superior Court's finding of no offer was correct,[2] Brown was excused from tendering performance by the McGuires' renunciation of the agreement. *O'Halloran v. Oechslie,* 402 A.2d 67, 70 (Me.1979). It is true that Alvin Brown appears to have continued hopeful that the parties would perform the agreement even after James McGuire's statement that it was "void and nullable." Whether or not Brown interpreted the statement as a repudiation at that time, the McGuires' refusal to permit the third party

---

1. While "unconscionable" contracts are specifically made unenforceable in 11 M.R.S.A. § 2-302, governing sales of goods, the Law Court has also long applied the doctrine of unconscionability as part of the equity power. *See,*

*e.g., Bither v. Packard,* 115 Me. 306, 314, 98 A. 929, 933 (1916).

2. The only testimony was that Alvin Brown did not *pay* the price, not that he made no offer.

buyer to see the house or to convey it by July 9 makes clear that any tender would have been futile and thus unnecessary as a condition precedent to this action.

Accordingly, we hold that the settlement agreement is an enforceable contract, and that the Plaintiff is not barred from seeking specific performance on the ground that it did not tender the price before July 9, 1984. We stop short of ordering specific performance, however, because we are not sure that the record on appeal fully reflects the parties' circumstances in their entirety. On remand Brown may move for entry of judgment in its favor. However, should the Superior Court determine that there are unresolved issues remaining, it may, if necessary, receive further evidence.

Judgment vacated.

Remanded to the Superior Court for proceedings consistent with the opinion herein.

All concurring.