## AIM LEASING CORPORATION

### v.

## BAR HARBOR AIRWAYS, INC., et al.

Supreme Judicial Court of Maine.

Argued Sept. 12, 1985.

Decided Oct. 16, 1985.

---

Perkins, Thompson, Hinckley & Keddy, John A. Ciraldo (orally), Andrew A. Cadot, Portland, for plaintiff.

Preti, Flaherty & Beliveau, Robert Checkoway (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendants Bar Harbor Airways, Inc. (Bar Harbor), Joseph A. Caruso, and Allyn J. Caruso appeal from an order of the Superior Court (Cumberland County) granting an attachment in the amount of $900,-000 to Aim Leasing Corporation (Aim). Aim sought recovery for breach of a lease contract, relying upon a liquidated damages clause in the lease for the amount of damages. Defendants argue that the affidavits submitted by Aim in support of its motion for attachment do not contain sufficient facts to demonstrate the enforceability of the liquidated damages clause. We agree and sustain the appeal.

## I.

On June 19, 1981 Aim leased two aircraft to Bar Harbor. Both Joseph A. Caruso and Allyn J. Caruso executed personal guarantees of the lease. Bar Harbor fell behind in its payments under the lease, and on December 9, 1983, Aim notified Bar Harbor that it intended to repossess the aircraft in accordance with the terms of the lease. After repossession, Aim sold the two aircraft on January 2, 1984, for a total of $3.6 million.

Aim then brought suit against Bar Harbor and the Carusos seeking recovery of $900,000 based upon a liquidated damages clause in the lease and moved for approval of a prejudgment attachment in that

amount. The lease contained a clause requiring Bar Harbor to pay upon default, "as liquidated damages for loss of a bargain, an amount equal to the Casualty Value of the Aircraft Equipment." Casualty Value, as defined, equalled that percentage of the cost of the equipment set forth in a stipulated loss value schedule annexed to the lease. The schedule set the percentage at 102.5 for the first six months of the term with the percentage declining thereafter at six month intervals but never falling below 25 percent.

Aim supported its motion for attachment with two affidavits of its President, Steven R. Berryman. Berryman's affidavits set forth Aim's damages as the Casualty Value calculated according to the stipulated loss value schedule plus overdue rent,[1] interest, and expenses, but minus the proceeds from the sale of the aircraft. Bar Harbor submitted the affidavits of its president, Allyn J. Caruso, and its vice-president for finance, Richard J. Rushmore, purporting to show respectively that the parties had agreed that the sale was to be a complete settlement of the lease transaction and that Aim had suffered no damages as a result of the transaction.

Finding a reasonable likelihood that Aim would recover an amount equal to or greater than the amount of its requested attachment, $900,000, the Superior Court granted the attachment.

## II.

■ The parties agree that a liquidated damages clause is not enforceable unless (a) the damages caused by the breach are very difficult to estimate accurately and (b) the amount so fixed is a reasonable forecast of the amount necessary to justly compensate one party for the loss occasioned by the other's breach. *Dairy Farm Leasing Co., Inc. v. Hartley,* 395 A.2d 1135,

1137 (Me.1978). Furthermore, at trial plaintiff has the burden of establishing that the liquidated damages clause under which it seeks recovery meets the two-fold test for enforceability. *Id.* at 1139. Bar Harbor contends that, in seeking an attachment, plaintiff must demonstrate more than the existence of the contract clause. Bar Harbor argues for a requirement that the supporting affidavits set forth facts establishing a reasonable likelihood of the enforceability of that clause under the *Dairy Farm* test.

■ The rule governing prejudgment attachment requires that specific facts be set forth by affidavit demonstrating entitlement to the attachment. M.R.Civ.P. 4A(h). Because prejudgment attachment can work serious hardship upon a defendant before the merits of the case are determined, this Court has emphasized the need for tendering specific facts in support of a requested attachment. *Bowman v. Dussault,* 425 A.2d 1325, 1329 (Me.1981). Only when presented with specific facts is the trial Court in a position to properly determine whether there is a reasonable likelihood that the party seeking the attachment will recover a judgment in an amount equaling or exceeding the amount of the requested attachment. *Id.; see* M.R.Civ.P. 4A(c). When a plaintiff relies upon a liquidated damages clause to demonstrate the amount of a probable judgment without presenting facts tending to show that the clause is enforceable, the evaluation contemplated by the rule cannot be performed.

■ If the contract clause alone were sufficient to support the amount of a requested attachment, an attachment could be granted without any inquiry whether the clause constituted a penalty. The beneficiary of such a clause could work the hardship of prejudgment attachment upon a defendant even though the clause was an

---

**1.** Plaintiff treats the liquidated damages clause as including both overdue rent and the casualty value of the aircraft. The overdue rent (amounting to approximately $120,000, according to the affidavits) arguably could sustain an attachment order in that amount, if considered separately. In view of the fact that plaintiff characterizes overdue rent as one element in the computation of liquidated damages, we have no occasion to consider it separately.

unenforceable penalty. We hold that plaintiff was required to establish a reasonable likelihood that the liquidated damages clause would be enforceable. Ordinarily, this would be done by demonstrating through affidavit that when the contract was formed damages for breach were very difficult to estimate accurately and that the stipulated sum constituted a reasonable forecast of the amount necessary to justly compensate plaintiff for the defendants' breach.

A review of plaintiff's affidavits reveals that they are deficient. In his supplemental affidavit,[2] Steven R. Berryman stated that the stipulated loss value schedule, upon which Casualty Value—the liquidated sum—was to be calculated, was prepared "in accordance with traditional courses of dealing and industry practice." He went on to state that the schedule percentages declined over time to reflect depreciation of the aircraft. Plaintiff's damages, however, would be equal in amount to the present value of the future rental payments remaining unpaid less the fair market rental value of the aircraft for the remainder of the term. *Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1140 (Me.1978). The affidavits contain no facts tending to show what the remaining fair market rental value may have been or why the Casualty Value, as calculated under the lease, would be a reasonable forecast of the difference between the value of unpaid future rent and the remaining rental value.

Clearly, a liquidated damages clause is designed to avoid the necessity of calculating and proving actual damages that might otherwise be difficult to ascertain. Nevertheless, the law imposes " 'the obligation of demonstrating some basis upon which, when the formula was fixed, it could be said to be a reasonable forecast of damages.' " *Id.* at 1139 (quoting *Wilson v. Clarke*, 470 F.2d 1218, 1223 (1st Cir.1972)). Aim's affidavits contain no facts tending to establish a reasonable likelihood that the liquidated damages clause reasonably forecasts the amount necessary to compensate it for loss of a bargain under the lease. For this reason alone, the attachment must be vacated.[3]

The entry is:

Order approving attachment vacated.

Remanded to the Superior Court for entry of an order denying the motion for attachment.

Defendants allowed their costs on appeal.

All concurring.

---

2. Aim filed an affidavit of Steven R. Berryman along with its complaint and motion for approval of attachment on January 10, 1985. On March 7, 1985, Aim filed Berryman's supplemental affidavit. Bar Harbor moved to strike Berryman's affidavit on the ground that M.R. Civ.P. 4A(c) makes no provision for the filing of supplemental affidavits. The Superior Court denied the motion to strike, finding no prejudice to Bar Harbor. On appeal, Bar Harbor renewed its claim that the supplemental affidavit should be stricken. Because we hold that the attachment must be vacated even if the supplemental affidavit is considered, we need not address this issue and express no opinion upon it.

3. We are not required to address the first prong of the *Dairy Farm* test, namely, whether the damages caused by the breach are very difficult to estimate accurately.