**Kenneth R. PALMER, a/k/a Kelly Palmer, Plaintiff–Appellee,**

v.

**Timothy SANDERSON and Jane Doe Sanderson, husband and wife; and Dennis Morrisette and Jane Doe Morrisette, husband and wife, Defendants–Appellants.**

Nos. 92–35290, 92–35311.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided Nov. 23, 1993.

Jack L. Burtch, Aberdeen, WA, for plaintiff-appellee.

John Francis Kennedy, Tacoma, WA, for defendants-appellants.

Before: GOODWIN, SCHROEDER, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Grays Harbor County Deputy Sheriff Timothy Sanderson, and Sheriff Dennis Morrisette, defendants in this action under 42 U.S.C. § 1983, appeal the district court's order denying their motions for summary judgment. Sanderson and Morrisette contend that the district court erred in concluding that they are not entitled to qualified immunity as a matter of law. Morrisette also argues that he cannot be held liable under § 1983 based solely on a theory of *respondeat superior*.

■ We have jurisdiction under 28 U.S.C. § 1291 to review the district court's order denying defendants' motion for summary judgment based on qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We have jurisdiction under 28 U.S.C. § 1292(b) to review the district court's denial of Morrisette's motion for summary judgment as to his vicarious liability. We affirm in part and reverse in part.

## BACKGROUND

On November 5, 1988 at about 3:30 in the morning, Officer Sanderson stopped Kenneth R. Palmer on suspicion of driving while intoxicated. Palmer was then 67 years old and had recently suffered a stroke which had impaired his mobility.

After asking Palmer to step out of his car, Sanderson administered two "field sobriety tests." Sanderson admits that the tests he performed failed to confirm his suspicion that Palmer was intoxicated.

According to Palmer's deposition testimony, it was raining and the wind was blowing at about 40 knots during this encounter. Palmer grew tired of standing in the rain taking tests, so he walked back to his car, telling Sanderson that he would sit there and answer questions. Palmer also told Sanderson that he would accompany Sanderson to the police station to take a breath test if Sanderson desired.

Sanderson then allegedly jerked Palmer out of his car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car with such force that Palmer fell over sideways. Palmer claims that the handcuffs were tight

enough to cause pain and discoloration to his wrists, and that Sanderson refused his request to loosen them.

Sanderson eventually cited Palmer for obstructing an officer and released him. A Grays Harbor County District Court judge dismissed the charge, however, finding that the state presented no evidence that Palmer "obstructed" Sanderson from carrying out his duties as a deputy sheriff.

Palmer then initiated this action under § 1983 against Sanderson, claiming that Sanderson arrested him without probable cause and used excessive force in making the arrest, in violation of the Fourth Amendment. Palmer also named Grays Harbor County Sheriff Morrisette as a defendant, alleging that Morrisette was liable under § 1983 as Sanderson's supervisor because Morrisette failed adequately to train, supervise, and control Sanderson.

Sanderson and Morrisette moved for summary judgment, claiming they were entitled to qualified immunity. Morrisette also moved for summary judgment on the ground that Palmer could not establish that Morrisette failed adequately to train, supervise, and control Sanderson.

The district court denied the motions for summary judgment. First, the district court found that defendants were not entitled to summary judgment on the issue of qualified immunity. Second, the district court found that Palmer had not produced evidence to support a finding that Morrisette failed adequately to train, supervise, or control Sanderson. The district court, however, held that Morrisette could be vicariously liable for Sanderson's misconduct based on a Washington State statute imposing vicarious liability on a sheriff for the misconduct of a deputy sheriff.

1. Defendants also argue that Palmer's complaint presents only conclusory allegations and thus fails to meet the heightened standard of specificity required in § 1983 actions. Even assuming that such a specificity standard exists in this case, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) ("heightened pleading standard" applied

## DISCUSSION

### A. Qualified Immunity

Law enforcement officials sued under § 1983 are entitled to qualified immunity if (1) the "right" they allegedly violated was not "clearly established" at the time of the violation, or (2) if a reasonable officer would have thought that the defendants' actions were constitutional. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Sanderson and Morrisette argue that the district court erred in denying their motion for summary judgment based on qualified immunity because (1) the Fourth Amendment's protection against excessive force was not clearly established at the time of Palmer's arrest; and (2) because Sanderson's conduct in arresting Palmer, although without probable cause, was objectively reasonable.[1]

We review *de novo* the denial of a defendant's motion for summary judgment based on qualified immunity. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir. 1993). The questions before us are purely legal: first, whether the right to be free from the degree of force allegedly used by Sanderson was clearly established on the date of Palmer's arrest, and second, whether there is any genuine issue of material fact as to whether a reasonable deputy could believe that his conduct in arresting Palmer was constitutional. *See Bryant v. United States Treasury Dep't,* 903 F.2d 717, 720 (9th Cir. 1990), *rev'd on other grounds sub nom. Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

#### 1. Excessive Force

Defendants argue that Palmer cannot show that the right to be free from the use of excessive force, as guaranteed by the Fourth Amendment, was clearly established on No-

in § 1983 action against a municipality is inconsistent with liberal system of "notice pleading" established by Federal Rules of Civil Procedure), a challenge to the specificity of a complaint is properly raised only in a motion to dismiss. At this stage of the proceedings, our focus is on the evidentiary materials in the record, and the question whether the plaintiff has produced sufficient evidence to raise a genuine issue of material fact.

vember 5, 1988, the day of Palmer's arrest by Sanderson. Defendants contend that not until the Supreme Court issued its decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) was the use of force by officers measured by the Fourth Amendment's "reasonableness" standard. According to defendants, before 1989, courts analyzed the use of force by officers under the substantive due process standard that prohibited only force that was "intentional, unjustified, brutal, and offensive to human dignity." *See Rinker v. County of Napa*, 831 F.2d 829, 831–32 (9th Cir.1987) (reciting substantive due process standard).

■ Contrary to defendants' assertion, the use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985. In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) the Supreme Court held that the Fourth Amendment governs not only whether a person or thing is subject to "seizure," but also "the manner in which a . . . seizure is conducted." 471 U.S. at 8, 105 S.Ct. at 1699. As the Court explained:

> To determine the constitutionality of a seizure "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion" . . . Because one of the factors is the extent of the intrusion, it is plain that *reasonableness depends on not only when a seizure is made, but also how it is carried out.*

*Garner*, 471 U.S. at 8, 105 S.Ct. at 1699 (citations omitted). *See also White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986) ("The use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure.").[2] Thus, the Fourth Amendment right to be free from the use of excessive force during an arrest was clearly established at the time of Palmer's arrest in November 1988.

Defendants are not entitled to qualified immunity under the "reasonableness standard" of the Fourth Amendment. Palmer claims that Sanderson fastened Palmer's handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that lasted for several weeks. Sanderson has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional. Because Palmer's evidence, if credited, would establish that Sanderson's use of force was excessive in violation of the Fourth Amendment, *see Hansen v. Black*, 885 F.2d 642, 645 (9th Cir.1989) (unreasonably injuring a person's wrists while applying handcuffs constitutes use of excessive force), the district court properly refused to grant summary judgment in defendants' favor on this claim.

### 2. Probable Cause to Arrest

■ Defendants are entitled to qualified immunity for Palmer's arrest if a reasonable officer could have believed that probable cause existed to arrest Palmer for obstructing an officer. *See Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

After Sanderson handcuffed Palmer, pushed him into the patrol car, and discussed the situation with another officer by radio, Sanderson decided to cite Palmer for "obstructing a public servant" under Wash.Rev. Code § 9A.76.020.[3] Defendants' evidence indicates that after taking a second sobriety

---

**2.** As defendant notes, excessive force claims were also analyzed under the due process clause until 1989, when the Supreme Court stated in *Graham v. Connor* that the Fourth Amendment was to be the sole restraint on officers' use of force in effecting arrests. *See, e.g., Rinker*, 831 F.2d 829. However, the fact that excessive force claims were occasionally analyzed under the due process clause before 1989 does not mean that the Fourth Amendment's application to these situa-

tions was not clearly established by cases such as *Tennessee v. Garner* and *White v. Pierce County.*

**3.** In relevant part, Wash.Rev.Code § 9A.76.020 provides:

> Every person who . . . shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor.

test, Palmer told Sanderson that he was going to leave. Defendants point out that under Washington state law, "flight constitutes obstructing, hindering, or delaying within the meaning of statutes comparable to RCW 9A.76.020(3)," *State v. Hudson,* 56 Wash.App. 490, 784 P.2d 533, 536, *review denied,* 114 Wash.2d 1016, 791 P.2d 534 (1990), and therefore probable cause existed to arrest Palmer.

In contrast, Palmer has testified that he grew tired of standing in the rain and walked back to his car, telling Sanderson that he would sit there and answer questions. He allegedly also offered to accompany Sanderson to the police station to take a breath test if Sanderson desired. If credited by the factfinder, this evidence would establish that no reasonable officer could believe there was probable cause to arrest Palmer for "obstructing a public servant." Because Palmer's evidence raises a genuine issue of material fact with respect to this issue, the district court did not err in finding that defendants were not entitled to qualified immunity as a matter of law.

### B. Respondeat Superior Liability

■ Whether Morrisette may be held liable solely based on a theory of *respondeat superior* is a question of law which we review *de novo.*

In his complaint Palmer alleged that Sheriff Morrisette negligently failed to instruct, supervise, control, train, or discipline Sanderson so as to prevent Sanderson's alleged use of excessive force and arrest of Palmer without probable cause. However, Palmer later conceded that his evidence could not support a finding of liability based on defective training, supervision, or control.

**4.** In relevant part, Wash.Rev.Code § 36.16.070 provides:

A deputy may perform any act which his principal is authorized to perform. The officer appointing a deputy or other employee shall be responsible for the acts of his appointees upon his official bond and may revoke each appointment at pleasure.

**5.** As a general rule, a panel not sitting en banc may not overturn circuit precedent. *United States v. Garza,* 980 F.2d 546, 555 (9th Cir.1992).

Palmer maintains, nevertheless, that Morrisette is vicariously liable for Sanderson's conduct under a Washington State statute imposing such liability, and under *Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir.1971). Under Washington Revised Code § 36.16.-070, a county sheriff is responsible for the acts of his or her deputies "upon his [or her] official bond." Wash.Rev.Code 36.16.070.[4] In *Hesselgesser,* we held that state statutes making sheriffs liable for the misconduct of their deputies are properly applied in actions under 42 U.S.C. § 1983 to impose vicarious liability on sheriffs for the civil rights violations of their deputies. *Hesselgesser,* 440 F.2d at 903.

■ Morrisette contends, however, that *Hesselgesser* has been implicitly overruled by *Monell v. Department of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (Congress did not intend to impose § 1983 liability on a person who does not "cause" a civil rights violation). We agree.[5]

In *Hesselgesser,* we noted that 42 U.S.C. § 1988(a) directs courts to apply state law in § 1983 actions under certain circumstances. In relevant part, § 1988 provides that:

[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a

However, " 'a panel can reexamine the earlier decision of a three-judge panel if that earlier decision has been undermined by later overriding precedent.' " *United States v. Magana,* 797 F.2d 777, 779 (9th Cir.1986) (quoting *United States v. Maybusher,* 735 F.2d 366, 371 n. 1 (9th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985)). In this case, the Supreme Court's decision in *Monell* constitutes such "later overriding precedent" as to justify reexamination of our decision in *Hesselgesser.*

criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988 (1981). In *Hesselgesser* we held that statutes imposing vicarious liability on sheriffs for the conduct of their deputies "are not inconsistent with the Constitution and laws of the United States," and therefore must apply in actions under 42 U.S.C. § 1983. 440 F.2d at 903.

▮ But in *Monell*, the Supreme Court held that Congress intended to impose liability under § 1983 only on those who " '*shall subject, or cause to be subjected*, any person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States....' " *Monell*, 436 U.S. at 691–92, 98 S.Ct. at 2036 (quoting 17 Stat. 13) (emphasis added by *Monell*). Thus, the Supreme Court concluded, Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692, 98 S.Ct. at 2036. Consequently, a state statute imposing vicarious liability on a sheriff for the conduct of his or her deputies is "inconsistent with the ... laws of the United States," 42 U.S.C. § 1988, notwithstanding our earlier holding in *Hesselgesser*. This inconsistency, in turn, precludes the district court from applying Wash.Rev.Code §§ 36.16.070 to this § 1983 action.[6]

Because Palmer admits that his evidence cannot support a finding of liability against Morrisette under a theory that Morrisette failed adequately to train, supervise, or control Sanderson, and because application of statutes imposing vicarious liability is not proper, the district court erred in not granting Morrisette's motion for summary judgment.

## CONCLUSION

We affirm the district court's order denying Sanderson and Morrisette's motion for summary judgment based on qualified immunity. However, we reverse the district court's order denying Morrisette's motion for

summary judgment. On remand, the district court shall enter judgment in favor of Morrisette on all claims.

AFFIRMED in part and REVERSED in part.

---

**6.** The Fifth Circuit reached the same conclusion in *Baskin v. Parker*, 602 F.2d 1205, 1207–08 (5th Cir.1979) (overruling *Madison v. Gerstein*, 440 F.2d 338, 341 (5th Cir.1971) (where state law imposes vicarious liability, a like cause of action arises under § 1983)).