**William BURBANK, Plaintiff**

v.

**SGT. Jeffery DAVIS Defendant**

**No. CIV.02–59–P–K.**

United States District Court, D. Maine.

Oct. 23, 2002.

---

Michael J. Waxman, Portland, ME, for Plaintiff.

Jeffrey T. Edwards, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, Michael A. Cunniff, McCloskey & Cunniff, LLC, Scarborough, ME, for Defendant.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT [1]

KRAVCHUK, United States Magistrate Judge.

William Burbank is the plaintiff in this 42 U.S.C. § 1983 action seeking damages for alleged violations of his constitutional rights during an early morning police encounter with a group of individuals in a pub parking lot in Portland, Maine. Sergeant Jeffery Davis, a Portland police officer is the only remaining defendant. Two counts tethered to the Fourth Amendment are still in contest: one alleging that Davis arrested Burbank without probable cause and one alleging that Davis used excessive force during the arrest. Davis has moved for summary judgment. (Docket No. 20.) For the reasons explained below the motion is **GRANTED–IN–PART** and **DENIED–IN–PART**.

### Discussion

### A. Summary Judgment Standard

I can grant summary judgment to Davis only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Davis] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.* I review the record in the light most favorable to Burbank, the opponent of summary judgment, and I indulge all reasonable inferences in his favor. *See Feliciano De La Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir.2000).

### 1. Davis's Motion to Strike Opposing Statements of Material Facts

On three fronts Davis has moved to strike several of Burbank's opposing statements of material facts. (Docket Nos. 26 & 32.) First he asserts that Burbank's opposing factual statements that rely on three depositions [2] from a different litigation must be stricken as they are not part of the record in this case. In support of this theory Davis cites, only, Federal Rule of Civil Procedure 56, underscoring the language that refers to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-

---

1. Pursuant to Federal Rule of Civil Procedure 73(b) the parties have consented to allow the United States Magistrate Judge to conduct all proceedings in this matter.

2. Davis also complains about a written police report but this document does not play a pivotal role in my disposition.

davits, if any." I agree with Burbank: the depositions are admissible in this case. They are sworn statements, *see, e.g., Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir.2001) ("Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence," citation omitted), Burbank could use the Davis and Vogel depositions to impeach Vogel, Twomey, and Davis (a party opponent) at trial, *Beiswenger Enters. Corp. v. Carletta*, 46 F.Supp 2d. 1297 (M.D.Fla.1999) (addressing depositions from state court proceeding involving same parties and subject matter, observing general rule "that any evidence which is admissible at trial can be used on summary judgment"),[3] and the filing of these materials with Burbank's submission · makes it part of the record in this case for purposes of Federal Rule of Civil Procedure 56. This conclusion does not mean that the depositions in question are certainly admissible evidence and will be used at trial for any and all purposes, any more than an affidavit filed in· support of or in opposition to summary judgment would necessarily be evidence at trial.

■ Second, Davis asserts that as a consequence of Burbank's failure to set out additional facts in a separate section Davis is entitled to have the additional facts stricken or deemed controverted. As Burbank points out, nothing in Rule 56 places an obligation on the nonmoving party to assert additional material facts. Burbank had elected to only respond to those facts set forth in Davis's statement of material facts and not to propound additional facts. To the extent that his responses to Davis's statement of material facts are additional facts cloaked as facts that rebut or qualify Davis's facts I have. not considered them.·

■ Third, Davis complains that some of the statements made in the affidavits filed by Burbank do not stem from the affiant's personal knowledge. Both parties are correct on this score: Davis in his assertion that information not based on personal knowledge is inadmissible, *see* Fed R. Civ. P. 56(e), and Burbank in his observation that this court will determine on a statement-by-statement basis whether the affiant's assertion is sufficiently grounded in personal knowledge, *see Perez v. Volvo Car Corp.*, 247 F.3d 303, 315–16 (1st Cir.2001) (courts undertaking the Federal Rule of Civil Procedure 56(e) admissibility analysis must use a scalpel rather than a butcher knife).

Based on this analysis the motion to strike is **DENIED–IN–PART**, in that the depositions are allowed.

### B. Facts Material to Burbank's Fourth Amendment Claims

The key factual disputes between the parties concern whether or not Davis participated in the arrest of Burbank; whether or not there was probable cause to arrest Burbank; whether or not Burbank

---

**3.** In his motion and reply Davis relies solely on Federal Rule of Civil Procedure 56 in arguing that the two earlier depositions are inadmissible. He has not suggested, nor do I address, whether there are Federal Rule of Civil Procedure 32 concerns with respect to the depositions of these three officers. I do not suggest that by allowing the use of these three particular witnesses' prior depositions in the context of the Rule 56 motion in this case that witnesses' depositions from earlier cases can be used in every case for every purpose without consideration of Rule 32.

resisted arrest; and whether or not the force used against Burbank at the time of his arrest was excessive.

### 1. Officers Arrive at the Scene

There is no dispute that in the early morning hours of July 30, 2000, Officer Davis and fellow police officer Richard Vogel were patrolling Portland in separate police cruisers. After an alert that trouble was brewing in the parking lot of Brian Boru's Public House, Vogel, Davis, and several other officers responded to the scene.[4] When Vogel arrived at the lot at 2:15 a.m. he observed at least fifteen people in the parking lot.

The parties dispute the tenor of the group when the officers arrived. Davis contends that Vogel and Officer Dolan were confronted with "a barrage of swearing and screams about 'police brutality,'" and the group refused to disperse. (Vogel 2002 Dep. at 17.) Burbank states that there was no swearing or screaming and no one was being confrontational. (Burbank Aff. at ¶¶ 4, 6.)

Burbank has not disputed that when Vogel arrived on the scene he saw Officer Libby on the ground struggling with a person Vogel saw to be resisting arrest and that when Davis arrived at the scene he also saw Libby on the ground wrestling with a person that he was attempting to arrest. Officer Libby pointed to a group of three to five males standing near a green car and instructed Vogel to arrest them. There were more than ten people in the parking lot where Burbank was arrested and as Vogel approached the crowd he was concerned about dealing with an angry and upset crowd that out-numbered the officers and that was becoming increasingly confrontational. His experience taught him that when an officer must arrest a member of an angry crowd making this arrest quickly will deescalate the emotions of the crowd. Vogel perceived a chaotic atmosphere after taking his arrestee into custody. He was hearing screaming and yelling from the bystanders. They were calling-out about "police brutality," complaining that the police could not do what they were doing, and declaring that it was not right. The parties dispute the tenor of these calls. (DSMF ¶ 78; POSMF ¶ 78.)

### 2. Orders to Disperse

With respect to orders from the responding officers to the crowd to disperse, the parties agree that one or more of the officers gave a general instruction to disperse to members of the crowd at the scene. Davis states that Vogel gave an order for the group to disperse upon his arrival and eventually gave ten to twelve orders to the bystanders to disperse. (Vogel 2002 Dep. at 17, 53.) Burbank was part of a group of eight people that were present in the lot, among them his girlfriend Kristin Heath. As Officer Vogel approached Burbank's group, accompanied by Officer Dolan, he ordered the group to leave the scene and admonished them that they would be arrested if they did not disperse. (Vogel 2002 Dep. at 17.) In Vogel's view if his orders had been heeded nobody would have been arrested for failure to disperse. Davis states that before Burbank was arrested an officer gave specific orders to Burbank and Heath to disperse from the scene but that Burbank did

---

4. The parties do dispute how Davis was alerted. Davis asserts that the officers responded after a report about the presence of a large disorderly group in the parking lot. (Vogel 2002 Dep. at 6.) Burbank denies this, stating that Davis testified that he heard a call from Officer Charles Libby who was calling out that there was a fight taking place. (Davis 2001 Dep. at 10–11.)

not leave the scene. (Heath Dep. at 25, 38, 51 & Ex. 1.)

Burbank asserts that he did not hear these warnings by Vogel and that there was no specific or personal order to disperse directed to him. (Burbank Aff. ¶ 7; Heath Aff. ¶ 4.) While Burbank was watching the Lechner arrest Burbank heard someone say, "get the kid with the tattoo." After he heard this, Burbank understood that he was going to be arrested as he has tattoos on his upper left arm at the time of the arrest. He states that when the arresting officer approached him the officer said nothing. (Heath Dep. at 37; Burbank Dep. at 31.) There is no dispute that Burbank said to one or more of the officers, "What are you doing?" and "Why are you doing this?" and "You can't beat someone who's not resisting arrest."

### 3. The Identity of Burbank's Arresting Officer

As the arresting officer approached Burbank, Burbank turned around so that his back was facing the officer.[5] Heath saw all the events surrounding the arrest of Burbank; she was standing about five feet from the arrest. Heath watched as the officer who ultimately arrested Burbank approached Burbank. At this juncture Burbank was located near a car.

With respect to the identity of the officer who arrested Burbank, Davis asserts that Officer Dolan joined Davis in arresting a male who was not wearing a shirt, a man who was later identified as Matt Lechner. (Davis 2002 Dep. Exs. 1, 4.) He states that he and Officer Dolan were in the same general vicinity as Burbank but "nowhere near" Burbank and Vogel. (Vogel 2002 Dep. at 18–19; Davis 2002 Dep. at 7.) Davis placed his arrestee (Lechner) in a headlock, after which Davis and this arrestee were facedown on the trunk of a vehicle. (Davis 2002 Dep. at 18.) Dolan assisted Davis in this arrest. This arrestee (Lechner) did not have a shirt on. (Davis 2002 Dep. at 24–25 & Ex. D.)

Burbank asserts that the officers involved in the Lechner arrest were Dolan and Vogel. (Twomey Dep. at 6.) Burbank and Heath are certain that it was Davis that arrested Burbank. (Burbank Aff. ¶¶ 11, 17–20, 25–26; Heath Aff. 4, 9–15.) Burbank states that only one officer participated in his arrest and he describes the man who arrested him as tall, "pretty built," with a bushy mustache. (Burbank Dep. at 10–11, 26, 49.) With respect to Davis's assertion that it was Vogel who arrested Burbank, Burbank states that Vogel gave a "vastly different description of how Vogel's arrest took place." (Compare Vogel 2001 Dep. at 8–10 with Vogel 2002 Dep. at 19, 22, 25.) He also attacks Davis's credibility by noting that Davis has previously sworn that he made one arrest that night and this was made with the assistance of Vogel. (Davis 2001 Dep. at 16.)

There are a few things about the identity of the arresting officer that have not been placed in genuine dispute. Vogel arrested a white male in his early twenties who was wearing a white tank top and a baseball cap and had tattoos. (Vogel 2002 Dep. at 6, Exs. 1 & 4.)[6] Burbank was twenty-years old at the time of his arrest

---

**5.** Burbank admits this statement and then adds additional facts that state that Burbank "did not wish 'to get the shit kicked out of him,' so he turned around and extended his hands to be arrested." (Burbank Dep. at 29–30; Burbank Aff. ¶ 17.) So framed, this is an additional statement of fact that should have been set forth in a separate statement.

**6.** Burbank admits this allegation but "objects" stating, "To the extent this arrest was of a person other than Mr. Burbank, it is irrelevant to this case."

and that evening was wearing a white tank top and cargo pants. The officer who arrested Burbank was wearing a police uniform and police cap. He was very tall, some where between six-feet and six-feet, four-inches. Officer Vogel is six-feet, four-inches and Officer Davis is six-feet, one or two-inches; Vogel is bigger and taller than Davis. Burbank perceived that the officer who arrested him weighed in the range of 200 to 300 pounds. This officer had a very fit appearance and dark hair.[7]

### 4. The Force Used in Burbank's Arrest

Davis asserts that the arresting officer, Vogel, grabbed Burbank and then "walked" Burbank a couple of feet to the side of a car. (Vogel 2002 Dep. at 19; Heath Dep. at 37.) He states that Vogel used his knee to strike Burbank in the thigh only when Burbank began to turn around. (Burbank Dep. at 31; Vogel 2002 Dep. at 19.) When Vogel attempted to turn the handcuffed Burbank around Burbank fell to the ground. (Vogel 2002 Dep. 22–23.) The rear-end of Burbank's body hit the ground as he fell. (Vogel 2002 Dep. at 23.)

Burbank asserts that Davis[8] handcuffed Burbank, kneed him multiple times, punched him in the back of the head, and threw him, head first, onto the gravel parking lot. (Burbank Dep. at 29, 31; Burbank Aff. ¶¶ 11, 17–22, 25–26.) Burbank states that he began to turn-around only after he was kneed by the officer. (Burbank Dep. at 31; Heath Aff. ¶ 11.) He states that after extending his arms and having his wrists handcuffed, he was

thrown to the ground head first. He twisted and landed on his shoulder and knee. He ended up on his rear. (Burbank Dep. at 32–33; Burbank Aff. ¶¶ 11, 17—22; Heath Aff. ¶¶ 13, 16.) Burbank was charged with disorderly conduct and failure to disperse. (Burbank Dep. Ex. 6 at 2.)

### 5. The Injuries

The parties agree that Burbank's body made contact with the car as he was being taken into custody. They also agree that the surface of the ground where Burbank fell was comprised on three-inch rock and dirt and that after falling on one of his shoulders Burbank's knee also hit the ground.

Burbank's injuries consisted of an "egg" on the back of his head, an abrasion on his shoulder, an abrasion on his knee, and an abrasion or bruise on the lower part of one of his arms. The abrasion on Burbank's knee was minor. This injury did not interfere with his ability to work. Burbank was injured on his right shoulder when he hit the ground in his handcuffed-fall. This abrasion did not required medical treatment, healed within two weeks, and did not interfere with his ability to work. The bruise or abrasion on Burbank's arm was caused during his fall. This abrasion did not require medical treatment and was not a continuing problem. Burbank's thigh was sore on the day after his arrest but there were no other medical problems with it. Burbank visited the Maine Medical Center on the morning of his arrest where he was examined and released without ad-

7. The record supports the conclusion that at the time of Burbank's August 22, 2002, deposition (more than two years after the arrest) the sides of Davis's hair were white hair but that his hair was dark on the top. The parties dispute how dark Davis's hair actually was at the time of the arrest, presenting competing

affidavits. (Compare Burbank Aff. ¶¶ 14–17, 25–26 with Davis Aff. ¶¶ 13–16.)

8. Burbank contends that he was not arrested by Vogel and the description of Vogel's arrestee's fall is irrelevant.

ditional treatment.[9] Burbank only suffered bruising and other minor injuries and not one of his injuries caused him to miss work. All of Burbank's injuries healed.

### C. Analysis of Davis's Assertion of Qualified Immunity as Grounds for Summary Disposition

■ Qualified immunity shields state actors like Davis [10] from civil suit for the performance of discretionary functions, like making an arrest, so long as the complained of conduct did not violate a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the wake of the United States Supreme Court qualified immunity cases *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) and *Hope v. Pelzer*, —— U.S.——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) the First Circuit has recently encapsulated its three-step qualified immunity analysis:

> We use a three-part test to determine whether an official is entitled to qualified immunity, *Hatch v. Dep't of Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir.2001), following the guidance provided by the Supreme Court, *see Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, —— U.S. ——,

122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Siegert*, 500 U.S. at 232, 111 S.Ct. 1789. The second question is whether the right was clearly established at the time of the alleged violation. That inquiry is necessary because officers should be on notice that their conduct is unlawful before they are subject to suit. *Hope*, —— U.S. at —— – ——, 122 S.Ct. at 2516–18; *Anderson v. Creighton*, 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The third is whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right. *Swain v. Spinney*, 117 F.3d 1, 9 (1st Cir.1997). The question of whether a right is clearly established is an issue of law for the court to decide. *Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). The reasonableness inquiry is also a legal determination, although it may entail preliminary factual determinations if there are disputed material facts (which should be left for a jury). *Swain*, 117 F.3d at 10.

*Suboh v. Dist. Atty's Office Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir.2002).

### 1. Qualified Immunity and the Identity of the Officer Who Arrested Burbank

■ Davis asserts that he is entitled to "qualified immunity and summary judgment" on all of Burbank's claims because Burbank has misidentified Davis as the arresting officer. If indeed Davis was not the arresting officer than he would be entitled to judgment in his favor on the simple basis that there is no claim against

---

**9.** Burbank asserts that he went to the hospital emergency room to assure that the substantial blow to his head did not require treatment. (Burbank Aff. ¶ 93.)

**10.** There is no dispute that Davis was acting under color of state law during the incident. *See* 42 U.S.C. § 1983.

him.[11] The doctrine of qualified immunity is only implicated when a governmental defendant is a proper party and when he or she has acted in an allegedly unconstitutional fashion. I therefore address this identity issue as an assertion by Davis that he is not a proper party.

Davis complains that Burbank's identification of him as his arresting officer is not reliable. He states that Burbank had his back turned to his arresting officer for nearly the whole arrest. Davis also seems to argue that Burbank's subsequent sighting of Davis during the Lechner trial and on the street before and in the room during depositions in this case influenced Burbank's identification of Davis as his arresting officer.[12] He states that "a fair inference may be drawn from the undisputed facts" that Burbank's identification of Davis is "not reliable and must be disregarded."

■ But this is not the direction I can draw inferences on Davis's motion for summary judgment, for it is Burbank not Davis that is entitled to have the inferences drawn in his favor. The facts material to this determination are hotly disputed. With respect to the identity of his arresting officer, Burbank has demonstrated that there is a genuine issue of material fact as to whether Vogel or Davis arrested him.

### 2. *Qualified Immunity and Burbank's Arrest–Without–Probable–Cause Claim*

As support for his claim that he had probable cause to arrest Burbank Davis asserts that there was a crowd at the scene of the arrest of ten to fifteen persons, that two other persons were being taken into custody while Burbank was yelling at the officers arriving at the scene, that there was a general order to disperse and one directed particularly to Burbank and Heath, and that Burbank did not leave the scene when so ordered. In response to Davis's argument Burbank states only: "With regard to the probable cause claim, no reasonably well-trained officer could have believed that probable cause existed for Mr. Burbank's arrest."

■ Even though Burbank has fallen far short in responding to Davis's motion vis-a-vis this count, I address the merits. Arrests made without probable cause can give rise to a 42 U.S.C. § 1983 claim. *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 349 (1st Cir.1995) ("The Fourth Amendment guaranty against unreasonable seizures of the person requires' that arrests be based on probable cause."). It is also true that, "[a]n arrest is lawful if it was supported by probable cause." *McDermott v. Town of Windham*, 204 F. Supp 2d. 54, 61 (D.Me.2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

The First Circuit has given state actors wide berth when analyzing claims of arrest without probable clause:

Where an arrest is challenged as unsupported by probable cause it is deemed "objectively reasonable" unless there

11. Vogel has been dismissed from the suit with prejudice per stipulation of the parties. (Docket No. 14.)

12. After Burbank was released from custody he filed an administrative complaint with the Portland Police Department about his treatment at the hands of the arresting officer. Burbank could not identify the officer by name. The only officers that Burbank saw again after his July 30, 2000, arrest and was able to recognize were Officers Libby, an individual that Burbank had seen in court after his arrest, and Davis, who Burbank saw at the court house when he attended Lechner's trial and saw again at the Davis deposition.

*clearly* was no probable cause at the time the arrest was made. Probable cause to arrest exists where the facts and circumstances within the police officer's knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. Probable cause is to be determined based on the collective knowledge and information of all the officers involved.

*Sheehy v. Town of Plymouth,* 191 F.3d 15, 19 (1st Cir.1999) (quotations, citations, and alterations omitted).

■ "Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *accord Williams v. Jaglowski,* 269 F.3d 778, 781 (7th Cir.2001) (quoting *DeFillippo*). Davis cites to Maine criminal statutes that permit an officer to arrest an individual without a warrant if the individual has committed or is committing a Class D or Class E crime in the officer's presence. *See* 17–A M.R.S.A. § 15(1)(b) (West Supp. 2001). He notes that 17–A M.R.S.A. 501 (West 1983 & Supp.2001) provides that a person is guilty of the Class E crime of disorderly conduct if he or she, while in a public place, "intentionally or recklessly causes annoyance to others by intentional-

ly" "[m]aking loud and unreasonable noises." *Id.* § 501(1)(A),(6). With respect to the failure to disperse charge, subsection (1) of 17–A M.R.S.A. § 502 states, "When 6 or more people are participating in a course of disorderly conduct likely to cause substantial harm or serious inconvenience, annoyance, or alarm, a law enforcement officer may order the participants and others in the immediate vicinity to disperse." Subsection (2) provides that a person is guilty of a failure to disperse when he or she knowingly does not comply with an order to disperse made pursuant to subsection (1). *Id.* § 502(2). Subsection (3) provides, "Failure to disperse is a Class D crime if the person is a participant in the course of disorderly conduct; otherwise it is a Class E crime." *Id.* § 502(3).[13]

■ Taken in the light most favorable to Burbank, the party asserting the injury, the facts alleged simply do not support a conclusion that the arrest of Burbank was without probable cause; that is, it cannot be said that "there *clearly* was no probable cause at the time the arrest was made." *Sheehy,* 191 F.3d at 19. For, framed in light of the Maine law cited above, it is undisputed that there was a crowd of no less than eight people in the parking lot, that the crowd was given a general order to disperse,[14] Burbank was verbally challenging the police actions in taking others into custody, and Burbank did not disperse.[15]

---

13. On January 31, 2003, subsection (3) will be repealed and subsection (2) will read as amended:

 A person is guilty of failure to disperse if the person knowingly fails to comply with an order made pursuant to subsection 1 and:
 (A) The person is a participant in the course of disorderly conduct. Violations of this paragraph is a Class D crime; or
 (B) The person is in the immediate vicinity of the disorderly conduct. Violation of this paragraph is a Class E crime.

17–A M.R.S.A. § 502(2) (West Supp.2001).

14. Burbank denies hearing any order to disperse. However, it is undisputed that the officers were aware that an order (Davis contends multiple orders) to disperse had been given and it is this awareness and not Burbank's that is material.

15. Even if I were to determine that Burbank's allegations if true do make out a claim for arrest without probable cause, Davis would prevail on the next part of the qualified im-

### 3. Qualified Immunity and the Excessive Force Count

Because, Burbank's excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine if Burbank has alleged that this right has been violated, I ask if the force used during his arrest was excessive under objective standards of reasonableness. *Saucier*, 533 U.S. at 201–202, 121 S.Ct. 2151 ("[T]here is no doubt that *Graham v. Connor* ... clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."). *Graham* explained:

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S. [1,] 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 [ (1985) ] (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

490 U.S. at 396, 109 S.Ct. 1865.

The facts material to this "threshold" determination are in dispute. Davis asserts that the force used was very minimal and in response to Burbank's efforts to turn on his arresting officer. It was only in response to this resistance that the officer used his knee to strike Burbank in the thigh. Davis claims that any further injuries to Burbank were due to an inadvertent fall when Vogel attempted to turn his handcuffed arrestee around.

Burbank asserts that after Davis handcuffed Burbank Davis kneed him multiple times and punched him in the back of the head. He states that he began to turnaround only after he was kneed by the officer. He contends that after extending

munity inquiry as an objective police officer could reasonably believe that he had probable cause to arrest Burbank. As the Seventh Circuit noted in *Williams*,

Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an "additional layer of protection against civil liability" if a reviewing court finds that they did not have probable cause. *Hughes v. Meyer*, 880 F.2d 967, 970 (7th Cir.1989). In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998). If the officers can establish that they had "arguable probable cause" to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause. *Id.* Accordingly, we will affirm the district court's grant of summary judgment if we find that "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Id.*

269 F.3d at 781. *See, also, Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir.2002).

his arms and having his wrists handcuffed, and after the assault with the knee, he was thrown to the ground head-first onto the gravel parking lot.

If I credit Burbank's version of the force used, I cannot conclude that it was objectively reasonable for Davis to apply this amount of force to an arrestee that was not resisting arrest. And I must credit Burbank's version of the evening events to the extent that he has provided record support for the allegations. Guided by *Graham* I conclude that the severity of the crimes at issue—the failure to disperse and disorderly conduct—do not inherently call for high levels of force in effecting arrest and Davis's own version of Burbank's resistance do not support a conclusion that much force was needed (indeed Davis contends that he used very little). The level of threat to the safety of the officers or others does not stand-out from this record, though this may be something that is more fully developed if this case proceeds to trial. Finally, at this stage I must credit Burbank's assertion that he was not actively resisting arrest or attempting to evade arrest by flight, but was only questioning the conduct of the officers with statements such as, "What are you doing?" and "Why are you doing this?" and "You can't beat some one who's not resisting arrest."

Several courts have concluded that allegations comparable to Burbank's state a claim for excessive force. *See, e.g, Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002) ("[O]n the facts as we must take them, there was simply no governmental interest in continuing to beat [the plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was."); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir.2001) ("Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth

Amendment."); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000) (similar); *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir.1993) (a sixty-seven year old man, was subjected to excessive force when he was jerked from his car, pushed against it, and handcuffed so tightly as to cause pain and discoloration in his wrists). This is not an instance where there are some subtleties in the facts, such as an arrestee's non-apparent medical susceptibilities, *see Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (shoulder injury); *McDermott*, 204 F.Supp 2d. at 64 (osteoporosis), that would make it unclear to an officer whether the force used was excessive. A reasonable jury could return a verdict in favor of Burbank on this claim if it found the facts to be as Burbank alleges.

 Having concluded that Burbank has alleged the violation of a constitutional right to be free from excessive force during an arrest, "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "This inquiry," *Saucier* emphasized "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* To be clearly established, a right's contours must be clear enough that a reasonable official would understand his or her conduct was unconstitutional. *Hope*, —— U.S. at ——, 122 S.Ct. at 2515. Under the First Circuit's three-part qualified immunity standard the "clearly established" element has two prongs: one, whether the right was clearly established at the time of the alleged violation and, two, whether a reasonable officer, similarly situated to Davis, would understand that the force exerted violated that established right. *Suboh*, 298 F.3d at 90.

I do not pause in reaching the conclusion that it was clearly established at the time of Burbank's arrest that a compliant arres-

tee, even one who is verbally questioning the officer's actions, has the right to be free from gratuitous beating and manhandling by an arresting officer after being handcuffed. *See, e.g., Graham,* 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) Supreme Court case articulating general standard for evaluating excessive force during arrests); *Palmer,* 9 F.3d at 1436 (1993) (9th Circuit case concluding there was a claim for excessive force on similar facts); *Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir.1994) (claim for excessive force stated when plaintiff suffered a serious leg injury after police officer arrested him for picking up a lost five dollar bill); *see also Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir.2000) (providing thorough discussion of the specificity requirement, concluding that the arrestee/plaintiff had a clearly established right not to have dogs set upon him after he was face down on the ground and nonresistant, even though there was no prior law precisely on point).

Next I ask "whether a reasonable, similarly situated official would understand that the challenged conduct violated the established right." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. In other words, it is possible that Davis violated Burbank's clearly established constitutional rights but is immune from suit because it was objectively reasonable for Davis to do so because the unlawfulness of his actions was not apparent to him. *See Anderson v. Creighton,* 483 U.S. 635, 643–44, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (observing that qualified immunity may extend to actors that violate the constitutional rights of the plaintiff).

■ If Davis gratuitously and unnecessarily hit and manhandled Burbank for no legitimate law enforcement reason it could not be objectively reasonable for it to be non-apparent to him that his actions violated Burbank's rights.[16] Whether Burbank can ultimately prevail on this claim will depend of whose story the fact-finder credits. *See Miller,* 220 F.3d at 495; *see also Saucier,* 533 U.S. at 216, 121 S.Ct. 2151 (Ginsburg, J. concurring) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be. When a plaintiff proffers evidence that the official subdued her with a chokehold even though she complied at all times with his orders, while the official proffers evidence that he used only stern words, a trial must be had."). Again, this is not an instance where there are some subtleties in the facts, such as an arrestee's non-apparent medical susceptibilities, that would make it unclear to an officer that the force used was excessive. Thus I conclude that Davis is not entitled to summary judgment based on qualified immunity on Burbank's excessive force claim; indeed, perhaps because the answer is so evident, Davis did not provide real argument premised on the *Saucier* standard.

Instead, Davis argues principally that he is entitled to qualified immunity because the use of force was *de minimis.* Assuming that Davis established in this record that the use of force was *de minimis,* his legal argument is advanced in direct contravention to the First Circuit's, recently reiterated, rule on this question. In *Bastien v. Goddard,* 279 F.3d 10, 14 (1st Cir. 2002) the Court stated:

**16.** While the reasonableness inquiry is a legal determination, on this record, as the First Circuit has suggested may be the case, resolution of this prong cannot be had without a factual determination because there are disputed material facts. *Suboh,* 298 F.3d at 90; *Swain v. Spinney,* 117 F.3d 1, 10 (1st Cir. 1997).

Our inquiry quickly reveals ... that liability may be imposed for the use of excessive force even in the absence of a serious injury.... Although the severity of the injury also may be considered, *see, e.g., Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991), we have stated explicitly that a "serious injury" is not a prerequisite to recovery.

[A] trialworthy "excessive force" claim is not precluded merely because only minor injuries were inflicted by the seizure. *See Lester [v. Chicago* ], 830 F.2d [706,] 714 [(7th Cir.1987)] (finding reversible error in district court "excessive force" instruction which required jury to find "severe injury," thus may have led jury to find for defendant where plaintiff's physical injuries consisted only of bruises); *see also Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994) (holding that plaintiff need not prove "significant injury" to assert Fourth Amendment "excessive force" claim).

*Alexis,* 67 F.3d at 353 n. 11. That view is widely held. *See, e.g., Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir.2001) (excessive force claims can be maintained regardless of whether injuries "left physical marks or caused extensive physical damage," including, as in that case, when individual's wrists are cuffed too tightly); *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001); *Headwaters Forest Defense v. County of Humboldt,* 240 F.3d 1185, 1199 (9th Cir.), *vacated and remanded on other grounds by* —— U.S. ——, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001) ( "[W]hether the use of force poses a risk of permanent or significant injury is a *factor* to be considered in evaluating the need for the force used in a particular case—but it is certainly not dispositive."); *Lambert v. City of Dumas,* 187 F.3d 931, 936 (8th Cir. 1999) (circuit has rejected the "signifi-

cant injury" requirement for excessive force claims, requiring instead "actual injury"); *Rambo v. Daley,* 68 F.3d 203, 207 n. 2 (7th Cir.1995) (significant injury not required for Fourth Amendment excessive force claims); *Wardlaw v. Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C.Cir.1993) (severity of injury a "relevant factor," but "we do not suggest that an individual *must* suffer significant injuries in order for the force used to be unreasonable").

*Id.* at 14–15 (footnotes omitted). Thus, though the extent of Burbank's injuries will be relevant to a determination on the merits of this claim, the fact that the injuries may not be permanent or severe does not bar recovery under 42 U.S.C. § 1983.

### Conclusion

Based upon the forgoing, vis-à-vis Burbank's claim that he was arrested without probable cause Davis's motion for summary judgment is **GRANTED–IN–PART.** However, Burbank's excessive force claim presents a trial-worthy issue, and with respect to this claim Davis's motion is **DE-NIED–IN–PART.** Davis's motion to strike is **DENIED** in that the depositions testimony may be used by Burbank in response to the motion for summary judgment.