**Albert M. PACHECO**

v.

**Eric SCOBLIONKO, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 2, 1987.
Decided Oct. 30, 1987.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The defendants, Eric and Diane Scoblionko, appeal from a judgment in a jury-waived trial in the Superior Court, Oxford County, requiring them to return to the plaintiff, Albert Pacheco, a camp tuition fee he paid for his son totalling $3,100.00, plus interest and costs. The Scoblionkos base their appeal on three grounds: (1) there was an inadequate basis for the Superior Court's finding that a liquidated damages clause in the contract between them and Pacheco was an unenforceable penalty, (2) Pacheco failed to mitigate his "damages," and (3) the other theories of recovery put forth by Pacheco are meritless. We affirm the judgment.

The facts in this case are as follows. Pacheco had sent his son to Camp Wekeela, a summer camp owned and operated by the Scoblionkos in Canton for several years. In 1985, Pacheco paid a full camp fee of $3,100.00 prior to February 1, 1985. This early payment allowed Pacheco to receive a discount on the regular camp fee, the amount of which is not specified in the record. The contract Pacheco signed in registering his son with the camp was on a pre-printed form. In one clause of the contract it was specified that if notice of a camper's withdrawal was received after May 1, 1985, the amount paid to the camp up to the time of the receipt of the notice would be retained by the camp.[1]

On June 14, Pacheco was informed that because his son, a high school student, had failed his final exam in Spanish, he would be required to attend summer school. That same day, Pacheco telephoned Eric Scoblionko, informing him that his son would be unable to attend camp and asking for the

Elliot L. Epstein, Gerard O. Fournier (orally), Isaacson, Hark & Epstein, Lewiston, for plaintiff.

Jeffrey Rosenblatt (orally), Berman, Simmons & Goldberg, Lewiston, for defendant.

1. The contract provision reads:
   The $500.00 deposit will be refunded if a request is received by the camp prior to February 1st, less a $25.00 administrative processing fee. If a refund request is received on or after February 1st and prior to May 1st, then no refund of the $500.00 deposit will be made. If a refund request is received on or after May 1st, the entire sum then paid to date shall be retained by the camp. The parties agree that any deposit so retained would constitute liquidated damages for cancellation of the contract.

return of the fees paid to the camp. Scoblionko refused to refund any portion of the $3,100.00.

Pacheco then initiated this action in the Superior Court, seeking return of the deposit. After a jury-waived trial held on January 14, 1987, the court, concluding that the liquidated damages clause was an unenforceable penalty, entered judgment in plaintiff's favor for the full amount claimed.[2]

## I.

■ By including in their camp contract language explicitly stating that the deposit was retainable as liquidated damages for cancellation of the contract,[3] the Scoblionkos have made the validity of this provision as a liquidated damages clause the central question of the case. Indeed, they state in their brief that the issue of its validity, which the Superior Court decided adversely to them, is "at the heart of this case."

In order to be valid, a liquidated damages provision must meet two requirements: "[T]he damages caused by the breach are very difficult to estimate accurately and ... the amount so fixed is a reasonable forecast of the amount necessary to justly compensate one party for the loss occasioned by the other's breach." *Aim Leasing Corp. v. Bar Harbor Airways*, 499 A.2d 154, 156 (Me.1985); *Dairy Farm Leasing v. Hartley*, 395 A.2d 1135, 1137 (Me.1978); *Interstate Industrial Uniform Rental Service, Inc. v. Couri Pontiac*, 355 A.2d 913, 921 (Me.1976). The enforceability of a liquidated damages provision is a question of law and is reviewed accordingly by the Law Court. *Interstate Industrial*, 355 A.2d at 921; *Wade & Dunton, Inc. v. Gordon*, 144 Me. 49, 52, 64 A.2d 422, 423 (1949).

On the facts of this case the Superior Court did not err in finding that the clause was unenforceable. The Scoblionkos produced no proof as to what damages were anticipated or actually sustained as a result

of the younger Pacheco's withdrawal. Moreover, the amount of the liquidated damages, which was 100% of the contract price, suggests the conclusion that it was an unenforceable penalty. "An excessive sum suggests that the parties did not make a good-faith effort to pre-estimate the actual loss." *Interstate Industrial*, 355 A.2d at 921; *see also Restatement (Second) of Contracts*, § 356 (1981). Contract provisions calling for liquidated damages or forfeitures disproportionate to contract price are frequently invalidated. *See, e.g., Huckins v. Ritter*, 99 N.M. 560, 661 P.2d 52, 54 (1983); *Berndt v. Bieberstein*, 465 So.2d 1264, 1266 (Fla.App.1985); *P & C Thompson Bros. Construction Co. v. Rowe*, 433 So.2d 1388, 1389 (Fla.App.1983); *Welch v. K-Beck Furniture Mart, Inc.*, 3 Ohio App.3d 171, 444 N.E.2d 48, 50 (1981); *2625 Building Corp. v. Deutsch*, 179 Ind.App. 425, 385 N.E.2d 1189, 1193 (1979); 5 S. Williston, *A Treatise on the Law of Contracts* § 790 (3d ed. W. Jaeger 1961).

In these circumstances, the "liquidated damages" provision appears to be a penalty, "placed in the contract ... for its *in terrorem* effect," *Dairy Farm Leasing*, 395 A.2d at 1140. The apparent intent of the clause is to deter parents from withdrawing their children from camp at a late date, without regard to any reasonable, good faith estimate of consequent damages. Accordingly, we conclude that the Superior Court did not commit error in determining that the liquidated damages clause was an unenforceable penalty.

## II.

■ The Scoblionkos argue that the Superior Court incorrectly assigned to them the burden of demonstrating that the liquidated damages provision was enforceable. They contend that the burden is cast on the party challenging a liquidated damages provision. In recent years few jurisdictions have addressed this issue. Those that have are divided on the point, with an

---

2. Defendants did not counterclaim for actual damages.

3. *See* the last sentence of the clause quoted in n. 1, *supra*: "The parties agree that any deposit so retained would constitute liquidated damages for cancellation of the contract."

apparent majority favoring the Scoblion-kos' position [4] and others adopting the contrary view.[5] We adopt the rule that the party seeking enforcement of a liquidated damages clause in a contract has the burden of proving its validity in accordance with the two requirements of *Interstate Industrial.* We regard this allocation of the burden of proof to be fundamentally fair since the party enforcing the provision will have "the most immediate access to the evidence on the issue of both (a) the difficulty of advance estimation of damages and (b) the reasonableness of the forecast." *Dairy Farm Leasing,* 395 A.2d at 1139–1140. *See also McIlvenny v. Horton,* 227 Ark. 826, 302 S.W.2d 70, 72–73 (1957).

▮ In the present matter, as will almost universally be the case, the Scoblionkos were not only the drafters of the contract but also the parties seeking to enforce the liquidated damages clause. As such they were correctly assigned the burden of proving its validity.[6]

We disagree with the Scoblionkos' argument that modern discovery serves to make whatever is accessible to them equally accessible to Pacheco. Notwithstanding the liberality of discovery rules, Pacheco could have had no way of ascertaining the "true" basis for the liquidated damages provision. The subjective reasons for incorporating such a clause are the exclusive knowledge of the Scoblionkos and are of an intangible nature that is not susceptible to effective documentation.

The defendants' remaining contentions are without merit and require no discussion.

The entry is:

Judgment affirmed.

All concurring.

---

4. *See, e.g., Hubbard Business Plaza v. Lincoln Liberty Life Insurance,* 649 F.Supp. 1310, 1313 (D.Nev.1986); *Little v. Rohauer,* 707 P.2d 1015, 1017 (Colo.App.1985); *Heikkila v. Carver,* 378 N.W.2d 214, 219 (S.D.1985); *Vines v. Orchard Hills, Inc.,* 181 Conn. 501, 435 A.2d 1022, 1029 (1980); *P.J. Carlin Construction Co. v. City of New York,* 59 A.D.2d 847, 399 N.Y.S.2d 13, 14 (1977).

5. *See, e.g., City of Fargo v. Case Development Co.,* 401 N.W.2d 529, 531 (N.D.1987); *C.O. Condominiums, Inc. v. Dickinson,* 301 So.2d 106,

108 (Fla.App.1974); *Patterson v. Anderson Motor Co., Inc.,* 45 Tenn.App. 35, 319 S.W.2d 492, 501 (1958).

6. Even though we place the burden of proof on the party seeking to enforce the liquidated damages clause, this does not alter the rule applicable in the usual case that it is the obligation of the party who opposes the clause to plead affirmatively its illegality in accordance with M.R. Civ.P. 8(c).