Eugene D. BERNATH, d/b/a Bernath Farms, Plaintiff

v.

POTATO SERVICES OF MICHIGAN, Defendant

v.

Giberson Farms, Inc. Third–Party Defendant.

No. CIV. 03–22–B–W.

United States District Court, D. Maine.

Jan. 15, 2004.

David P. Rupp, Jr., Plassman, Rupp, Hensal & Short, Archbold, OH, Kevin M. Cuddy, Cuddy & Lanham, Bangor, ME, for Eugene D Bernath aka Bernath Farms, Plaintiffs.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, for Agway Inc, Bankrupt Party.

Richard D. Tucker, Tucker & Dostie, P.A., Joshua E. Birocco, Tucker & Dostie, P.A., Bangor, ME, for Potato Services of Michigan Inc, Defendant.

## ORDER

WOODCOCK, District J.

### I. Introduction

This Order addresses three motions in the above-captioned matter: the Plaintiff's Motion to Remand; the Defendant's Motion for Summary Judgment; and the Third–Party Defendant's Motion for Partial Summary Judgment. For the reasons discussed below, this Court DENIES the Plaintiff's Motion to Remand; GRANTS the Defendant's Motion for Summary Judgment as to Count I only; and, GRANTS the Third–Party's Defendant's Motion for Partial Summary on Count I.

### II. Facts and Procedural History

In the fall of 1999, the Defendant, Potato Services of Michigan ("PSMI"), contracted with Agway, Inc. ("Agway"), a

licensed broker under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA"), for the purchase of Certified Superior seed potatoes. PSMI then contracted with the Plaintiff, Eugene Bernath, d/b/a Bernath Farms, to supply Bernath with Certified Superior seed potatoes. Bernath operates a farm in Ohio. The contract between PSMI and Bernath contained a limitation of consequential damages provision that provided:

> Any damages arising from our (sic) of this contract shall be limited in all events to the return of the actual purchase price paid as per trade terms of sale for such seeds on that portion of the seed potatoes on which a complaint may arise. The seller or producer shall not be liable for prospective profits or special, indirect or consequential damages. The return of the actual purchase price paid as per trade terms of sale for such seeds is he exclusive and sole remedy available to the buyer or user of these seed potatoes.

(*See* Def.'s Mot. Summ. J. at Ex. A (Docket # 20).) The contract also provided the following forum selection clause:

> (a) It is agreed that any action for breach of this CONTRACT FOR SALE or of any warranty, express of implied, must be commenced within one (1) year after the cause of action has occurred; and,
>
> (b) It is agreed that the laws of the "Seed State of Origin," as specified hereabove in Item No. 4 and none other govern this agreement, sales transaction and seed product. If legal action is brought, the agreed place of venue is to be the "Seed State of Origin."

(*See* Def.'s Mot. Summ. J. at Ex. A (Docket # 20).) The contract listed the "Seed State of Origin" as Maine. Bernath had purchased seed potatoes from PSMI for many years before this transaction and on six prior occasions had signed contracts with PSMI containing exactly the same contractual language found in the 1999 contract at issue.

Earlier in 1999, Agway had purchased seed potatoes from Giberson Farms, Inc. ("Giberson"), a potato grower and producer. Due to complications from flooding, Giberson inadvertently sent Agway Atlantic seed potatoes labeled as "Certified Superior seed potatoes." All parties agree that it is impossible to distinguish visually between the two varieties at the seed stage. The parties also appear to agree that, once harvested, Superior potatoes, which are table variety potatoes, are more valuable than Atlantic potatoes, which are not suitable for table stock and are generally used to make potato chips.

In the spring of 2000, Agway shipped the seed potatoes labeled "Certified Superior" directly to Bernath. After rejecting a certain number because of soft rot, Bernath paid PSMI approximately $19,310.60 for the remaining shipment. (*See* Def.'s SMF at ¶ 9 (Docket # 21).) PSMI "neither touched nor saw the seed potatoes at issue." (*See* Def.'s SMF at ¶ 7 (Docket # 21).)

At harvest, Bernath discovered that the potatoes were actually Atlantic potatoes, and, in February 2001, Bernath brought suit against PSMI in the Ohio Court of Common Pleas. Bernath raised five counts in its complaint: Count I, strict liability under PACA; Count II, breach of contract; Count III, breach of express warranties; Count IV, breach of implied warranties; and, Count V, negligence. PSMI answered the complaint and brought a Motion to Transfer or Dismiss, alleging that the forum selection clause mandated that any action be brought in Maine, as the "Seed State of Origin." On November 13, 2001, the state court denied

PSMI's Motion to Transfer or Dismiss, holding that "compelling Plaintiffs [Bernath] to prosecute this action in Maine would be, and is 'unconscionable.'" (See Pl.'s Mot. Remand (Docket # 29).) After the state court ruling, PSMI joined Agway as a third-party defendant.

On February 25, 2002, Agway removed the action to the United States District Court for the Northern District of Ohio ("Ohio Federal Court") on the basis of diversity jurisdiction. 28 U.S.C. § 1441. Bernath moved to remand the case to state court or, in the alternative, to require the Ohio Federal Court to treat the November 13, 2001 state court order as the law of the case. The Ohio Federal Court denied the motion. It concluded Bernath had waived the right to object to Agway's untimely removal and since the federal court had subject matter jurisdiction, Bernath did not have authority to remand the case. The Ohio Federal Court also concluded that the law of the case doctrine was inapplicable, because Agway had not been a party at the time of the state court order and because the doctrine did not prevent the federal court from reconsidering previously decided issues.

Bernath then moved for partial summary judgment against PSMI. It argued that there was no genuine issue of material fact on whether the contract had been breached and the Ohio State Court's November 13, 2001 Order, in which the forum selection clause was deemed "unconscionable" and, therefore, unenforceable, should be applied to the limitation of damages clause. At the same time, PSMI moved for summary judgment or, in the alternative, for a transfer to this Court.[1]

The Ohio Federal Court declined to apply the law of the case doctrine, concluding the state court's ruling regarding the en-

forceability of the forum selection clause was "clearly contrary to Ohio law." (See Def.'s Mot. Summ. J. at Ex. D, p. 5 (Docket # 20).) Accordingly, the Ohio Federal Court transferred the case to this Court for a ruling on, among other things, PSMI's motion for summary judgment. This Court received the transferred case on February 6, 2003.

On March 11, 2003, Agway filed a Suggestion of Bankruptcy and, on June 25, 2003, Magistrate Judge Kravchuk granted Bernath's motion to sever the third-party complaint against Agway and proceed solely against PSMI. On September 2, 2003, PSMI filed a third-party complaint against Giberson.

Turning to the first of three motions before this Court, Bernath has moved to remand the case to the state court in Ohio. (Docket # 29). Bernath returns to the November 13, 2001 Order of the Ohio State Court. He argues that this court should give "full faith and credit" to the state court order, holding the forum selection clause unenforceable. He cites the *Rooker–Feldman* doctrine as prohibiting this Court's exercise of subject matter jurisdiction on a matter previously adjudicated by a state court. Finally, he contends that because Agway, the party that removed the case to federal court is no longer a party, the Ohio Federal Court's denial of his earlier motion to remand is inapplicable. Both Giberson and PSMI filed objections to the Motion to Remand (Docket # 33 and 40, respectively) and Bernath filed a response to the objections (Docket # 41).

Second, PSMI has moved for summary judgment. (Docket # 20). PSMI argues that summary judgment is appropriate because either (1) the liquidated damages clause is valid according to the test estab-

---

1. For its part, Agway also moved for summary judgment, contending that a limitation of damages clause in its contract with PSMI entitled it to judgment as a matter of law.

lished in *Pacheco v. Scoblionko*, 532 A.2d 1036 (Me.1987); (2) section 499b(5) of the PACA shields it from liability because it was not the "first licensee" to handle the subject seed potatoes; or, (3) the Ohio Federal Court's decision that the forum selection clause is enforceable is now the law of the case and means that the limitation of damages clause is similarly enforceable. Bernath filed a Memorandum in Opposition to the Motion for Summary Judgment (Docket # 30) and PSMI filed a response to Bernath's objection (Docket # 35).

Third, Giberson has moved for partial summary judgment as to PSMI's third-party complaint. (Docket # 46). PSMI brought two claims against Giberson: Count I, violation of the PACA; and Count II, breach of express and implied warranties of merchantability. Giberson moves for summary judgment as to Count I, contending § 499b(5) of the PACA shields it from liability, because it is not a merchant, dealer, or broker under the PACA. In support of its motion, Giberson submitted a Statement of Material Facts (Docket # 47). Bernath filed an objection to Giberson's motion (Docket # 50) and PSMI filed a response to Bernath's objection (Docket # 57). However, on December 22, 2003, at oral argument on these motions, Bernath and PSMI conceded that they do not oppose Giberson's Motion for Partial Summary Judgment.[2]

## III. Discussion

### A. Plaintiff's Motion to Remand

■ As the Plaintiff has challenged subject matter jurisdiction, this Court will address first the Plaintiff's Motion to Remand. The Plaintiff argues that Agway's severance triggers an elaborate chain reaction, which requires this case to go back to where it began in the fall of 2001: since the Ohio Federal Court based its rejection of the Ohio State Court decision on the fact Agway was not a party, once Agway was severed from the case, the Ohio State Court decision resumed its position as "law of the case," making the forum selection clause unenforceable and mandating a remand to the Ohio State Court. To buttress his position, Plaintiff cites the *Rooker–Feldman* doctrine, claiming it precludes both the Ohio Federal Court and this Court from reviewing a state court judgment. The Plaintiff's analysis is flawed for a number of reasons.

First, the Plaintiff fails to consider the totality of the decision by the Ohio Federal Court. Although the Ohio Federal Court based its rejection of the State Court decision in part upon Agway's absence from the case at the time of the State Court decision, the Ohio Federal Court's overriding conclusion was that the law of the case doctrine did not "foreclose a court from reconsidering issues previously decided." (*See* Def.'s Mot. Summ. J. at Ex. D, p. 5 (Docket # 20).) Upon examining the Ohio state law, the Ohio Federal Court concluded "the state court's ruling on the forum selection clause was clearly contrary to Ohio law, and thus the law of the case doctrine should not be applied." (*See* Def.'s Mot. Summ. J. at Ex. D, p. 5 (Docket # 20).) Instead, the Ohio Federal Court enforced the forum selection clause and transferred the case to this Court. Even if the portion of the Ohio Federal Court decision that is based on Agway's absence from the case is no longer applicable, this does not nullify the remainder of the decision. To accept the Plaintiff's argument, this Court would be required to

---

2. Indeed, such was obvious prior to oral argument. Neither the Plaintiff's nor the Defendant's replies to Giberson's Motion responded to the rationale Giberson presented. Instead, both the Plaintiff and the Defendant used their "objections" to elaborate on the merits of the Plaintiff's claim against the Defendant.

enforce a state court order that is clearly contrary to state law. This Court will not do so.

■ Similarly, the Plaintiff posits an unpersuasive reading of the *Rooker–Feldman* doctrine. The doctrine provides that inferior federal courts have no subject matter jurisdiction to review judgments of a state court; such judgments must be pursued in the state appellate system and, if necessary, by way of review of the state's highest court in the United States Supreme Court.[3] *In re Diet Drugs*, 282 F.3d 220, 240 (3rd Cir.2002); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The instant case is distinguishable. The Ohio Federal Court did not "review" a state court judgment; instead, the Ohio Federal Court reconsidered an earlier decision in a case Agway removed to federal court. Plaintiff's view of *Rooker–Feldman* would unreasonably limit a federal court's authority when a case is removed and the state court has already issued judgments and orders. *See Diet Drugs*, 282 F.3d at 240 (holding that *Rooker–Feldman* doctrine does not work to defeat district court's authority over management of its own case, even in instances where management effectively reverses or voids state decision); *see also* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had [in actions removed to district court] shall remain in full force and effect until dissolved or modified by the district court"); *Kizer v. Sherwood*, 311 F.Supp. 809, 812 (M.D.Pa.1970) ("[I]t is within the power of the Federal Court to set aside a default judgment rendered by a State Court before removal of a particular case"). The Plaintiff has not convinced this Court that the Ohio Federal Court's decision extended beyond the proper limits of a district court's authority when receiving a case on removal into the impermissible territory of the *Rooker–Feldman* doctrine.

Finally, the Plaintiff's Motion to Remand is untimely. Title 28, section § 1447(c) provides, in part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Agway removed this case on February 25, 2002, and Bernath's Motion to Remand of April 11, 2002, was deemed untimely then. Even if the court accepts the questionable proposition that the time limit of § 1447(c) should recommence upon Agway's severance from the case on June 25, 2003, Bernath's September 22, 2003 Motion to Remand violates the thirty-day time limit under § 1447(c). Now, nearly three years after suit was brought, more than four years after the contract was signed, having been litigated in three different courts, this case cries out for finality.

## B. Defendant's PSMI's Motion for Summary Judgment [4]

Summary Judgment is appropriate if the pleadings, depositions, answers to inter-

---

**3.** While *Feldman* includes the language "final judgments of a state court," 460 U.S. at 482, 103 S.Ct. 1303, the *Rooker–Feldman* doctrine is not limited to final judgments, *see, e.g., Schroll v. Plunkett*, 760 F.Supp. 1385, 1388 (D.Or.1991) (collecting authorities).

**4.** The Plaintiff's Responsive Statement of Material Facts ("Responsive SMF") (Docket # 31) does not comply with Local Rule 56 because the Plaintiff attempts to incorporate an affidavit regarding damages in the section of the Responsive SMF admitting, denying, or qualifying the Defendant's Statement of Material Facts. Local Rule 56(h)(2) does not provide for additional facts within this section and this Court may disregard the Plaintiff's

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Defendant seeks summary judgment in its favor on Count I, the PACA claim, and Counts II–V, the contract and tort claims. The PACA claim is susceptible to summary judgment, since the Defendant claims it is entitled to judgment as a matter of law. However, the remaining Counts are not, since the Defendant does not claim judgment should issue in its favor. Rather, the Defendant seeks a ruling as to the enforceability of the limitation of damages provision in its contract with the Plaintiff. What is cloaked as a motion for summary judgment is more akin to a motion *in limine.* Nevertheless, the fundamental issue in this case is the enforceability of the limitation of damages provision and, as the parties have fully briefed and argued the issue, this Court will address it. For the reasons discussed below, this Court concludes that the provision is enforceable.

## 1. PACA Claim

■ Section 499b(5) provides, in part: It shall be unlawful in or in connection with any transaction in interstate of foreign commerce for any commission merchant, dealer, or broker to misrepresent by work, act, mark, stencil, label, statement or deed, the character, kind, grade, quality, quantity, size, pack, weight, condition, degree of maturity, or state, country or region of origin of any perishable agricultural commodity received, shipped, sold, or offered to be sold interstate or foreign commerce. . . .

A person other than the first licensee handling misbranded perishable agricultural commodities shall not be held liable for the violation of this paragraph by reason of the conduct of another person who did not have knowledge of the violation or lacked the ability to correct the violation.

The PACA defines "licensee" as any firm that holds an unrevoked, valid, and unsuspended license issued under the PACA. 7 U.S.C. § 499c(b)(2). The Defendant argues Agway was the first licensee to handle the seed potatoes; accordingly, § 499b(5) shields it from liability.

The Plaintiff responds to the Defendant's argument by stating:

Bernath agrees that [the Defendant] was not the first licensee to "handle" the seed, but [the Defendant] issued the first representation as to the grade of potatoes to be delivered—Superior as opposed to Atlantic—in the seed contract at issue. Based upon this representation, [the Defendant] should be liable under the applicable PACA provisions for the full extent of damages incurred by Bernath . . . .

(*See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 7 (Docket # 30).) The Plaintiff does not cite any law for its unique interpretation of the term "handle" and there does not appear to be a published decision that supports the Plaintiff's argument. Accordingly, summary judgment is appropriate as to Count I of the Plaintiff's Complaint.

Resolution of the PACA claim does not resolve the entirety of the Plaintiff's Complaint. Section 499o of the PACA reads, in part:

affidavit regarding damages. *E.g., Burbank v. Davis,* 227 F.Supp.2d 176, 179 (D.Me.2002) (stating that to extent nonmovant's responses to movant's statements of material fact were additional facts cloaked as facts that rebutted or qualified movant's facts, and not set out in

separate section, court would not consider them). However, it is not necessary to consider the issue at this time, as the Plaintiff's ability to establish damages is secondary to the enforceability of the limitation of damages provision.

This chapter shall not abrogate nor nullify any other statute, whether State or Federal, dealing with the same subjects of this chapter; but it is intended that all such statutes shall remain in full force and effect except insofar only as they are inconsistent herewith or repugnant hereto.

Section 499o indicates that the PACA was not intended to repeal the law of sale or to destroy the rights and liabilities of the contracting parties thereunder. *E.g., Rothenberg v. H. Rothstein & Sons*, 183 F.2d 524, 526 (3rd Cir.1950). Therefore, this Court must consider the remaining counts against the Defendant, as they are not necessarily preempted by the PACA.

### 2. Counts II–V

█ The Court now turns its attention to Counts II–V, the viability of which hinge on the enforceability of the limitation of damages provision. The Plaintiff argues that applying the provision would be appropriate if he had received an inferior crop of Certified Superior seed potatoes, as opposed to Atlantic seed potatoes. To recognize the provision, the Plaintiff contends, "would be to adopt a Chevy warranty for a Ford truck." (*See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 7 (Docket # 30).) This Court disagrees with the Plaintiff's analysis. The provision is enforceable for a number of reasons.

First, the Plaintiff has not established that the provision "fails of its essential purpose" within the meaning of those words in the Uniform Commercial Code ("U.C.C." or "Code"). The U.C.C. provides where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as otherwise provided in the Code. *See* 11 M.R.S.A. § 2–719(2) (adopting U.C.C. language verbatim). The Official Comment explains:

[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial benefit of the bargain, it must give way to the general remedy provisions of this Article.

The policy behind § 2–719(2) is to ensure that "minimum adequate remedies" are available:

It is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequences that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.

*Id.* at Cmt. 1. In practical terms, a remedy fails of its essential purpose when "novel circumstances not contemplated by the parties" make it impossible to carry out the essence of the remedy. 1 *White & Summers Uniform Commercial Code* § 12–10 (4th ed. 2003) ("*White & Summers*"). For instance, when a seller refuses or is unable to repair defective goods, a "limited repair and replacement" remedy fails of its essential purpose. *Id.* Similarly, if a remedy requires a buyer to perform an act that cannot be performed because of the seller's breach, the remedy fails of its essential purpose. *Id. White & Summers* instructs:

[S]uppose an automobile manufacturer limits remedy to repair and replacement of defective parts and provides that the defective parts must be delivered to its plants. If the entire car is destroyed as a result of defective wiring, repair and replacement of those parts would not restore the car to working condition. The exclusive remedy would fail of its essential purpose.

*Id.*

Here, the Plaintiff has failed to show any novel circumstances not contemplated

by the parties that make it impossible to carry out the limitation of damages provision. The provision provides for damages equal to the purchase price under the contract; the Defendant's delivery of nonconforming seed potatoes hardly impedes the return of the purchase price.[5]

Further, the Plaintiff has failed to show why this Court should set aside an agreed-upon allocation of loss between two experienced parties. 1 *White & Summers* § 12–10 ("[B]usiness people should be permitted to agree on any remedy they want and, having done ... that their allocation of loss should not be upset by a court"); *see Providence & Worcester Railroad Co. v. Sargent and Greenleaf, Inc.*, 802 F.Supp. 680, 691 (D.R.I.1992) ("Where an agreement between buyer and seller was made in a 'sophisticated commercial setting' an exclusion of liability for consequential damages was valid and enforceable even though circumstances caused the limited remedy provided by the agreement to fail of its essential purpose") (internal citation omitted). Indeed, the Plaintiff's position as an experienced commercial buyer of seed potatoes is one basis upon which this Court distinguishes *Brooker v. Vermont Log Buildings, Inc.*, 1983 Me.Super. LEXIS 90, *1, where a consumer log home purchaser challenged the enforceability of a limitation of damages provision after the

materials he purchased proved to be defective.[6]

Second, the limitation of damages provision is enforceable because it is reasonable under Maine common law. The Maine Supreme Judicial Court has often stated that the inquiry used to determine the enforceability of a liquidated damages clause, referred to here as the *Pacheco* test, requires: (1) the damages caused by the breach are "very difficult" to estimate accurately; and (2) the amount fixed is a reasonable forecast of the amount necessary to compensate justly one party for the loss occasioned by the other's breach. *E.g., Pacheco*, 532 A.2d at 1038; *Interstate Indus. Uniform Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913 (Me.1976). In Interstate Industrial Uniform, the Law Court expounded on the elements of the test:

> These two requirements, one demanding reasonable pre-estimation and the other calling for damages incapable of pre-estimation, appear contradictory. Yet this apparent contradiction is reconciled in the fundamental goal of contract law—protection of the parties' reasonable expectations.... The ... requirements mean simply that the reasonableness of the amount stipulated as liquidated damages is to be examined as

**5.** The Plaintiff cites *Maine Farmers Exchange v. McGillicuddy,* 697 A.2d 1266 (Me.1997), for the proposition that "failure to deliver potato seed conforming to seller's representations is clearly recognized as a breach of contract." (*See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 5 (Docket # 30).) *McGillicuddy* is not on point, as the Law Court merely held that where a buyer told a seller the variety of seed potato it desired and the purpose for which he desired it, the variety and seed were a "substantial part of the bargain" and an express warranty existed. 697 A.2d at 1269. The Law Court did not address whether a remedial provision within the contract failed of its essential purpose.

**6.** *Brooker* is not otherwise instructive to the case at hand. There, the Superior Court concluded that it needed to conduct further fact-finding to determine whether a limitation of damages provision failed of its essential purpose. 1983 Me.Super. LEXIS at *4. However, the court stopped well short of saying that further fact finding was required whenever courts evaluate such provisions. *Id.* ("Whether plaintiff's contractual remedy so failed in its purpose as to permit plaintiff to obtain additional damages under Count II must be resolved through further fact-finding"). In the case at hand, this Court does not need the benefit of further fact-finding to understand the provision and the circumstances surrounding it.

of the time the contract was formed and that the amount must be reasonable both in terms of the subject matter of the contract and the parties' situation and as a prediction of the harm resulting from a prospective breach. The requirement that damages must be difficult to ascertain is actually a corollary to the general requirement of reasonableness; if damages could be easily ascertained liquidated damages would be of little use since any departure from the actual harm would be looked upon as unreasonable.

355 A.2d at 921.

In this case, the limitation of damages provision meets the *Pacheco* test. The damages caused by a breach of this sort of contract are "very difficult to estimate accurately" because they depend on market conditions, such as the fluctuating demand for potatoes, and product conditions, such as the quality of the potatoes harvested. Also, the amount established reasonably compensates the Plaintiff for the breach. The Plaintiff bargained for Certified Superior seed potatoes. The limitation of damages provision returns to the Plaintiff that with which he parted—the purchase price—in order to obtain the benefit of the contract—Certified Superior seed potatoes. These facts are distinguishable from those before the Law Court in *Pacheco*, where a summer camp relied on a liquidated damages clause to refuse the return of a camper's tuition when the camper could not attend. The clause set damages at 100% of the contract price and the camp produced no evidence as to damages anticipated or actually sustained as a result of the camper's withdrawal. The Law Court reasoned that the clause was actually a penalty: "The apparent intent of the clause is to deter parents from withdrawing their children from camp at a late date, without regard to any reasonable, good faith estimate of consequent damages." 532 A.2d at 1038. By contrast, the Defendant has shown the difficulty in estimating damages and the reasonableness of the liquidated damages amount for the Defendant's breach. In doing so, the Defendant has established what the summer camp did not.

Between this experienced buyer and an experienced seller of seed potatoes, the limitation of damages provision protects the parties' reasonable expectations, constitutes at least minimum adequate remedies as required by the U.C.C., and falls within the realm of reasonable compensation under the *Pacheco* test. Accordingly, this Court concludes that the provision is enforceable.

## C. Third–Party Defendant's Motion for Partial Summary Judgment

The Third–Party Defendant's Motion for Partial Summary Judgment on Count I of the Third–Party Complaint is GRANTED.

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion to Remand is DENIED; the Defendant's Motion for Summary Judgment is GRANTED as to Count I only; and, the Third–Party Defendant's Motion for Partial Summary Judgment on Count I is GRANTED. In addition, this Court rules that the liquidated damages provision of the contract between the Plaintiff and the Defendant is enforceable. The remainder of Defendant's Motion for Summary Judgment is DENIED. The case will be set forward for trial on all remaining issues.

SO ORDERED.